Brockenbrough, J.
In the view which I have taken of this case, I do not know that it is important to decide which is the best construction of the ci*?il law, that contended for by the appellant’s or by the appellee’s counsel. I shall, however, briefly notice them. On the one hand, we have the plain words of the Institutes, Lib. III. Tit. XXVI. § 1. “ If no express agreement be made ’by the partners concerning their shares of profit and loss, the loss and the profit must be equally divided;” Cooper’s Justinian, p. 280. Gow says, if there be not an express agreement, the partnership, as regards its regulation, is governed by the contract implied by the law from the relation of the parties : that in the latter case, the concurrent opinion of all the writers on the civil law, is, that the loss must be equally borne, and the profits equally divided ; and for this position he refers to the above quoted passage from the Institutes. The same construction is adopted by chancellor Kent in the third volume of his commentaries; and such was the clear opinion of lord Eldon, as expressed in Peacock v. Peacock, 16 Ves. 55. In that case, the jury that tried the issue which the chancellor had directed, found that the plaintiff, who had been taken into partnership by his father without any -convention as to the shares of profit and loss, was entitled to one fourth of the profits: lord Eldon was dissatisfied with the verdict, and said, it appeared to him that the son, insisting that he had a beneficial interest, must be entitled to an equal moiety, or to nothing; that as no distinct share was ascertained by force of any express contract between them, they , must of necessity be equal partners, *271 If partners in any thing. This opinion goes to the full extent of the construction contended for by the appellant’s counsel. On the other hand, the researches of mr. Cooke have enabled him to shew, that several learned, commentators have construed the,passage from the Institutos and the correspondent passage from the Digest, differently. They maintain, that when a partnership contract does not express the ratio by which the profits shall bo divided, and the original amount or value of the input of each partner is apparent or ascertainable, the profits shall be divided in the same proportion that the stock was contributed. This construction of the rule is adopted by Gothofred and Pothier, in the passages referred to by the counsel; and seems also to be supported by Domat, vol. I. Tit. VIII. § 1. 5. He says—“Although the partners have not expressly marked both the portions of the gain and those of the loss, yet if the portions of the gain have been expressed, those of the loss will likewise be regulated on the same foot. And if, without saying any tiling of the gain or loss, it he sufficiently expressed what every one has put into the common stock, the portions of the gain or loss will he the same with those of the stock.” I am very strongly inclined to the opinion, that this is the true construction; and that where it is clearly expressed, that A. puts into the common stock one hundred dollars, and B. fifty, and nothing is said about the profit or loss, the profits will be divided in the same ratio, if the business be successful, and the losses in the same ratio, if unsuccessful.
But if this be the true construction, yet the appellee’s counsel gains nothing, unless he can shew, that these partners have in fact contributed unequally to the common stock. The construction is not at all incompatible with the proposition, that if one of the partners lends or sells to the firm the whole stock, he lends or sells to the other partner one moiety of that stock, and that each partner thereby contributes equally to the common *272 stock. The partner borrowing or buying, is a debtor, to other, and is liable to refund or pay, either from his own share of the profits, or from his own peculiar property. This idea is well' expressed by lord Eldon, in Crawshay v. Collins—“Where a sum is advanced as a loan to an individual partner,, his profits are first answerable for that sum; and if his profits shall not be sufficient to answer it, the deficiency shall be made good out of his capital; and if both his profits and his capital are not sufficient to make it good, he is considered as a debtor for the excess.”
According to the evidence in this case, I am of opinion, that the input of goods, wares and merchandise of e.ach of the partners, Lane a,nd Towner, was equal. I form this opinion from the entries in the books of the partnership, which are, most persuasive evidence for and against each, because they are the books ,of both. It is true that these books are not copied into the record, but they were resorted to by the commissioner (and the report in this respect is not excepted to); and from his report it is evident, that the first account raised in them was thus: “ Dr. James Lane in account with Lane Sp Towner, Cr.” And the first credit given to Lane with the partnership, on the very day it was formed, (15th September 1817) was for sundry goods, wares and merchandises, per inventory of this day, 48,456 dollars. Here was an advance by Lane to the partnership of the whole of the specified sum, and consequently to Towner his partner, of a moiety of that sum. The goods which had been previously the property of Lane were on that day inventoried and valued, and placed in the storehouse of Lane Sp Towner, and the former owner was credited with them on the books of the partnership. This was a sale and transfer of those goods by Lane to the firm, and by this simple operation the property in them was transferred to Lane Sp Towner. If the goods had been sold by a Baltimore wholesale merchant to *273 the house of Lane fy Towner, no one would doubt that Towner’s share of them was the same with that of Lane ; and I can see no difference between a sale by a third person and the sale by L,ane himself.
The personal services of the partners, I consider as equal; at least, 1 see nothing in the evidence to justify the opinion, that the administrator of Lane can set up any pretension to greater services than Towner. The latter was engaged principally in the business of selling the goods, for which his long acquaintance with the customers peculiarly fitted him. T^ane, on the other hand, was principally engaged in buying and laying in goods. Even if this service was more important than that of selling (which does not appear), yet this was counterbalanced by the fact that Inane’s whole attention was not bestowed on the business of this particular partnership. He was the elder partner in many other firms, and he was employed in making purchases not only for Lane Sf Towner but for. all his other mercantile concerns.
One argument urged to shew that Towner was not entitled to an equal share of the profits, is, that after the partnership had been in existence for two years, he wrote a letter to Lane, inquiring on what terms he expected or intended him to do business; and declaring, that he would not have done business for two years for any other person without knowing the terms; but that, placing the most implicit confidence in him, he had not before thought it necessary even to ask what part of the profits he was to receive. The inference is hastily drawn from this letter, that Towner knew he was not to share equally. It is not a correct inference. The change that was about to take place in Towner’s situation, plainly shews his motive in asking for a decision. It is not wonderful, that he should wish to be on a sure footing; and this long protracted controversy proves, that he was right in his desire to have the questions which might *274 arise between them settled by a convention. With resPect t0 this letter, I will observe, 1. that it tends to prove, that, at its date, there had been no agreement between them as to the shares of profit and loss; and, consequently, that it leaves the operation of the rule of law (whatever it may be) in full force : 2. that as there is no answer to it, specifying the terms on which Lane understood they should keep up the partnership, we must conclude, that Lane himself was willing, that the decision of the question as to the share of the profits should rest on the footing on which the law placed it. If it be supposed, that Lane did answer the letter, and that Towner withheld the answer, it may be remarked, that the suspicion is entirely gratuitous. The bill does not charge, that Lane ever answered the letter, nor does it call on the defendant to say, whether he ever answered it: the plaintiff) by an amended bill, might have required the evidence of the defendant on oath as to this matter; and we cannot infer, in the absence of the answer to the letter, that Lane ever did express in writing, or otherwise, any determination as to the manner of sharing the profits.
The judge of the circuit superiour court was of opinion, that under the circumstances of this case, the defendant Towner reasonably deserved to have one fourth of the net profits, and the other partner three fourths. This decision was probably founded on that of lord Ellenborough in Peacock v. Peacock, 2 Camp. 45. on the trial of the issue which lord Eldon had directed. He left it to the jury to decide, what the plaintiff should have, and they decided on one fourth. If the judge, in this case, had been right in supposing that it should be decided on the principle of quantum meruit, yet I think he was wrong in not leaving that matter to be decided by a jury.
I am of opinion, that the rule adopted by chancellor Browne in the directions which he gave to the commis *275 sioner was entirely correct. The only objection made to it by the appellant’s counsel, is, that he authorized interest to be allowed to Lane on all advances made by him to the firm. I have no doubt that a jury would have allowed interest; and it is a well settled rule, in all our courts, that it shall be allowed on all advances, whether the account has been liquidated or not.
The commissioner in his report conformed to the directions of the chancellor, and reported the net profits (after paying Lane the amount of all his advances to the firm, and interest on them) to be 41,023 dollars. In that settlement the goods were charged to the firm at the price set down in the inventory first taken. This is objected to by Towner, and a great deal of evidence is taken to prove, that they were very greatly overvalued. I pay no attention to that evidence. The inventory and valuation were made under the superintendence of both the partners, and that makes it a binding agreement on them.
I think the decree should be reversed, and the cause remanded to the circuit superiour court, to be further proceeded in according to the opinion declared by this court.
Cabell, J.
It is unnecessary to discuss the question, what ought to be the ratio for apportioning the profits and losses of the firm of Lane Sf Towner, if the parties had contributed unequal portions of input stock, and had been silent as to the rule of apportionment. No such inequality exists in this case. Nothing was put in as stock by either partner. Neither contributed any thing, but his personal credit, his skill, his attention, his time and labour. The goods, wares and merchandise, which, on the 15th September 1817, were entered on the books of the firm to the credit of Lane, were not put in as his portion of input stock, but as a sale to the partnership. By that transaction, the goods became *276 the joint property of the house; Towner’s interest in them was, m every respect, equal to that of Lane; and if they had been consumed by fire the next day, the loss would have fallen on Towner equally with Lane; p0). j-je wouici have remained liable to Lane for a full moiety of the price at which they had been entered to the credit of Lane. Every body would admit this to be the case, if the goods had been purchased from some merchant in Baltimore, or elsewhere; and the principle is precisely the same where the purchase is made of an individual partner. Towner’s contributions to the firm, so far as relates to these goods, and indeed as to every thing else, were equal to Lane’s; and as the partners made no special agreement as to the division of profits, the case, in this view of it, becomes one to which, by universal consent, - the rule of equality is applicable. Towner is, therefore, entitled to an equal portion of the profits.
But I am of opinion, that Lane is entitled to interest on his advances to or for the company, and that his account should be settled on the principles applicable to ordinary debtors and creditors. He is to be credited for the goods furnished by him to the partnership, at the price at which they are credited to him in the books; for that must be regarded as a matter adjusted and agreed to by the parties. But in settling the affairs of the partnership, for the purpose of ascertaining the profits, the goods remaining on hand at the dissolution of it, should be set down at the price at which they were sold, and not at the inventory prices, as stated in the report of the commissioner.
The decree should be reversed, and the cause remanded to be farther proceeded in according to these principles. And both parties should be at liberty to take any exceptions to the reports of the commissioner, heretofore made, that they might have taken at any former stage of the cause.