Tucker, P.
The plaintiff in error having waived, .and very properly, the 1st and 5th errors assigned in his statement, the first question to be considered is the propriety of rejecting the parol evidence offered by him in support of his third and fourth pleas. And it has been contended, that in the consideration of this ■question, it is unimportant to consider whether the pleas themselves were good or not. This would indeed have been an argumentum ad hominem in the court below, to which it might plausibly have been said, You have admitted the pleas as good, and why then -should you reject the evidence to sustain them?” But in this court it is otherwise. If the inferior court has admitted an. improper plea, notwithstanding the objections of the plaintiff, and has afterwards rejected the evidence in support of it, it has but remedied the first error by the commission of the second; and this court could with no propriety reverse the last act, and thereby resuscitate the former error to the plaintiff’s prejudice. The true question, then, is as to the validity of the pleas. How, both of them appear to me utterly and radically defective. They offer no defence to the action, and if the evidence had been admitted, and a verdict found for the defendant upon these pleas, and there were no other pleadings, judgment must have been rendered against him non obstante veredicto. 1 *282 Chitty’s Plead., 634, (7th American, from 6th London edi., p. 695,) cited 2 Tucker’s Comm., 266. /
The action is brought upon a bond, with condition to convey a tract of land. The breach assigned is the failure to convey. In answer to. this action, these pleas are filed; and as both are very much the same, except in a particular to be hereafter noticed, I shall confine -myself in the first place to the first, which would seem the least objectionable.
This plea makes no pretence to the performance of' the covenant. It must be taken to be either a plea of accord and satisfaction, or a plea of substitution of another agreement, which has been performed, for that which is sued upon, or as an excuse for nonperformance.
As a plea of accord and satisfaction, it is naught throughout. Por the accord and satisfaction is set forth as having been agreed on the 10th of July, 1816, and made and accepted in 1817, and by the assignment of breaeh it appears that the breach was not until 1830. Thus the accord and satisfaction must have been of the contract, and not of the damages; and no-accord -and satisfaction of a contract under seal, before-breach, can be good-without deed. 1 Taunt. 428; Com. Dig. Pleader; 2 Y. 8, cited 2 Tucker’s Comm.,. 28. And if it could only have been good by deed, the plea ought to have shewn that it was by deed. Moreover, if it was by deed, the deed ought to have been produced, that the court might see that it was a good and operative release and discharge of the first contract. Por where either party pleads 'a deed under which he either claims or justifies, he must make proferí of it to be shewn to the court and his adversary.-1-Chitty’s Plead. 397. It must be pleaded- and produced, that it may be answered by plea of non est factum, or by demurrer, if its legal operation does not amount to a discharge. These, and possibly other *283 reasons, have concurred in inducing the learned counsel not to insist on the plea, as a plea of accord and satisfaction.
Next, is it good as a plea of substitution of another agreement, -which has been performed, for that which is the subject of the action? This is to my mind the true light in which the transaction is to be considered. Let us examine it.
Stephen Wilson had bound himself to convey a tract of land to William Spencer. John Wilson was the surety. Stephen Wilson, instead of conveying to Spencer, according to contract, conveys to John Wilson and one Benjamin Wilson, subject to a deed of trust to one Harness, given by Stephen Wilson, on this very land. These facts appear by the plea itself. So that, by the defendant’s own shewing, Stephen Wilson had disabled himself from performing his contract, by first subjecting the land to an incumbrance, and then conveying it to third persons, in the teeth of his covenant. It is true, this did not operate as a breach of that date, since Spencer had not at that time entitled himself to performance, by performing the precedent conditions.
The first part of the plea, then, distinctly sets forth that Stephen Wilson had disabled himself to convey the land directly from himself to William Spencer. He was so disabled when the agreement stated in the plea was made. What then was that agreement? It was, in substance, that if John and Benjamin Wilson would convey the land to Joseph Spencer, subject to Harness’s deed of trust, William Spencer would accept such a deed as a full discharge of the title bond. Here, then, is a distinct allegation of a new and entirely different agreement, which, when performed, was to be a full discharge of the first. It was the agreement to substitute the performance of one thing for another. Now, a parol agreement for a substituted *284 contract cannot be pleaded. 1 East, 680; 3 T. R., 596, cited 1 Chitty’s Plead., 524. This substituted contract, then, to be effectual, must have been under seal; and if under seal, it ought to have been so pleaded. Hence it is clear, that while the facts set forth in the plea shew distinctly the case of a substituted contract, it cannot avail as such, because it does not appear to have been under seal.
It may not be uninteresting or unimportant to observe, however, that other reasons, besides the rules of pleading, rendered it essential to the validity of this agreement, that it should have been under seal. The statute of frauds required it.
"What was the state of the case, and the nature of the new contract ? It was thus: William Spencer, who was entitled to a conveyance of the land to himself, is represented as agreeing that the land shall be conveyed, not to himself, but to another; namely, to Joseph Spencer. What is the effect, then, of the contract ? It is, distinctly, to pass William Spencer’s land to Joseph Spencer. Could this be valid and binding under the statute of frauds? Could it be in consistency with that statute, to permit William’s title to be taken away by mere parol evidence ? Assuredly not.
But it is said, that although the contract must be written, the authority to make it may be by parol; and that here parol authority was given to Joseph Spencer to receive the deed to himself and give the discharge. Why this but makes’ the matter worse. Though it has been decided that an authority may be by parol, was it ever heard that my parol authority to another man, to get a deed for my land made to himself was not within the statute ? The authority here constitutes the contract. Joseph Spencer has parol authority to get a deed made to himself of William’s land, and he has no other evidence of his right thus to have a conveyance to himself of the property of *285 another. If such a ease does not require the authority to be in writing, the statute is a nullity: it is sounding brass and a tinkling cymbal.
But this is not all of this extraordinary affair. The allegation is, that instead of getting to himself the conveyance of the 150 acres of land which he had pureased, William Spencer verbally authorized Joseph to have a deed executed to himself, in discharge of the original contract; and this, without the allegation of the consideration of one cent moving from Joseph to William. So that, by parol authority, he is made to part with his estate without value received, to the very individual to whom the alleged authority is given, and who thus combines most singularly, in his own person, the characters of grantee and agent of the grantor.
But admit that we may go into the field of speculation and make a case: Suppose that William had sold to Joseph for value, we have yet the difficulty, that, whereas by the title bond William had a right to a good deed without incumbrances, he agrees by this contract to take the conveyance of the identical tract, subject to incumbrances—subject to a deed of trust, under which, according to the defendant’s own affidavit, another person has acquired the property.* Such an agreement is no good accord and satisfaction, unless the previous contract be released. Bor, as the payment of a less sum is no good satisfaction of a greater—1 Str., 426; 5 East, 230; 4 Mod., 88, (cited 2 Tucker’s Comm., 26,)—so the conveyance of a tract of land with an incumbrance, can be no satisfaction of the obligation to convey the same land ivithout incumbrance. And if such agreement is not good as an accord and satisfaction, without a release, neither can it be good as a substitution for the first agreement, without such release. Above all, it can in no manner *286 operate as a release, since an authority by parol can confer no power to execute a release, or any instrument which can have the force and effect of one.
The learned counsel, not insensible to these difficulties, has endeavoured to avoid them, by contending the plea is intended as matter of excuse for nonperformance. It is a sufficient answer to this position to refer to the plea, which appears to have no sort of analogy to the plea of excuse, the forms of which the distinguished jurist and pleader by whom it was drawn would certainly have pursued, had such been his design. See Forms, in 8 Ohitty’s Plead., 1003-1009. The plea was obviously designed to shew a discharge, although it wants, it is true, the material requisites to constitute it such. But suppose it pleaded as an excuse, still it does not avoid the objections made to it as a plea of accord. And besides, what sort of excuse is it, for not conveying to me land to which I have a right, to say that he who was bound to convey to me had sold and conveyed to third persons, and that they, without any lawful authority from me, had conveyed to a fourth? Was it any excuse for not conveying to William Spencer, that Stephen Wilson had conveyed to John and Benjamin Wilson? Or admitting he conveyed to them, that they might convey to William Spencer, (which, by the way, is no where pretended,) is it any excuse for their not conveying to William, that they had conveyed to Joseph without4any lawful authority from William ? By no means. And it has been already shewn that a parol authority to Joseph, to have a deed made to himself of William/s land, is void under the statute, and confers no authority.
The first special plea, then, is naught. The second is worse, for on its face it appears that the authority was by parol. Both pleas, then, being naught, there could be no error in rejecting the evidence in support of them. It is unnecessary, therefore, to enter upon *287 the numerous objections which suggest themselves to the evidence, considered independently of the faults in the pleading. Yiew it as we may, I think it was properly rejected.
We come next to the question as to the criterion of damages. The jury, it is supposed, have assessed the damages according to their estimate of value at the time of the breach; and it is contended that that was erroneous. Thompson’s ex’or v. Guthrie’s adm’r, 9 Leigh, 101. In the decision in that case, I coincided; but it is there distinctly intimated that the rule is not unbending, and that it will yield where, in consequence of fraud on the part of the vendor, its application would be unreasonable. In no case would it be more unreasonable than in one where the vendor, in violation of his contract, has sold or encumbered that property which he had bound himself to convey free of incumbrances. To say that a vendor may evade his contract by a sale to another, and become liable to nothing more than the return of the purchase money, is in effect to give to that party the power of rescission whenever a higher price is offered, provided he can make his second sale to a purchaser without notice. To avoid the stringency of this objection, the learned •counsel admitted that a court of equity would compel the vendor to account for the increased price. And why not a court of law? If Stephen Wilson got the increased value of the land, and would be liable -for it in equity, why shall he not be so at law ? The true question then is, whether the circumstances of this case would justify the recovery any where? And I think they would. Waiving the objection to the course of the defendant upon the trial, there was enough before the jury to fix a fraud on Stephen Wilson. The defendant’s pleas were before them, and they had a right to take as true the allegations of the defendant in his pleadings. In them it is distinctly alleged that *288 Stephen "Wilson had sold the land to Benjamin and-John. There is no intimation that that conveyance-was in trust to convey to the plaintiff; and, moreover* Stephen had incumbered the property (as the pleas-also shew) with a deed of trust; and though the plaintiff sued for a breach of the contract, there is no deed-tendered to him by the pleadings. It seems, then,., that the title was once in Stephen, and that he parted with it; so that the case is not that of a party who has. conveyed in good faith'that to which his title unexpectedly proves defective, but of one who had a title in him, but, after his contract of sale, has disabled himself to perform, by conveying to another. Such a vendor should pay the value at the time of the breach,, upon the principles of Thompson’s ex’or v. Guthrie’s adm’r.
It is said, however, that the purchase money is the measure of the damages; that the plaintiff was therefore bound to shew what it was; that, in defect of his. doing so, his damages should be nominal; and that such should have been the result in this case. The-premises and conclusion are alike unfounded. According to the class of cases of which Stout v. Jackson,. 2 Rand., 132, is the leading one, the value of the land at the time of the contract, is established as the true criterion of damages, and this in analogy to the recovery in the warrantia chartm. Between that recovery and purchase money, there is no analogy. Yet, as the value at the date of the contract is regarded as giving the rule, it has been held that the agreed price between the parties was the fairest measure of that value. But that is only where there is an agreed price. Suppose there be none: suppose it were a personal service to be performed, such as to go to Europe to negotiate a loan; in such a case, instead of the value of the land being estimated by the service, it is obvious that the value of the service would be best measured by the *289 value of the land. That is most certain, and most susceptible of ascertainment. The value of the laúd, then, at the date of the contract, is the true criterion in general for estimating the damages; and where there is no agreed price, and the consideration is of a matter collateral, and not a sum of money in numero, the value of the land must be estimated upon evidence before the proper tribunal. Such was the case here. There was no agreed price of the land. The consideration consisted of two collateral acts; first, the delivery to Stephen Wilson of a contract between himself and one William Smith; and secondly, the discharge, and delivery to Wilson, of two bonds of his to Smith, amounting to eleven or twelve thousand dollars. Shall we then estimate the value of the land, which is the desideratum, by the testimony of witnesses, and thus directly attain our end; of shall we go round about to work, and ascertain the value of the collateral acts, in order thereby to measure the value of the land ? The- absurdity of the latter proceeding, requires no commentary to expose it. In this case, then, as there was no agreed price, as the title bond in the record evinced this, the court was right in saying that it was not necessary the actual consideration paid by the plaintiff should be proved. The plaintiff had only to prove the value of the land. He did offer proof of it, referring to the time of the breach, and contended for that as the fair criterion of his damages. The defendant does not appear to have controverted it, but entered into the controversy as to the value at that period. Had he moved to instruct the jury that the date of the purchase was the true period to which to direct their attention, the question would have been fairly presented; the plaintiff would have been called on to shew why the rule should not apply; and if the instruction was refused, the court would have spread its reasons on the record. Instead of this, he joins issue *290 with the plaintiff as to the value in 1830, and offers-evidence to reduce the price at that date.. And when the jury have fairly taken, the medium value, he asks a new trial, because they did' not do that which he-neither asked them to do, nor asked the court to im struct them to do. And even on this motion for a new trial, he does not have all- the evidence spread on-the record, but submits himself to the decision of the-court, only as to the damages being excessive, and not as to the principle on which they were estimated. The court, therefore, very- naturally sets forth only what was proved as to value,, without referring at all to the question of principle, now raised by the defendant. Upon the whole, therefore, I do> not think him-entitled to a reversal, for the refusal" to grant a new trial.
Next, as to the interest. I think it was within the-power of the jury to allow it, and moreover that the justice of the case demanded it. It was allowed in the parallel case of Pate v. Spotts, 6 Munf., 394, and not objected to.
Lastly, as to the form of the judgment. The case1 of Pate v. Spotts, seems to me fully to sustain the judgment .here. It only differs from this in being full of' irregularities; yet they were all disregarded. The declaration, as here, was on a title bónd, and in debt; the jury assessed the damages, with interest; and the court gave judgment, not for the penalty of the bond, to be discharged by the damages, but for the damages themselves. This was held an irregularity not injurious to the appellant, and the judgment was affirmed. I think it was rightly so. The judgment was certainly informal; and in a case where further breaches, might occur, as in debt on administration bonds, the-irregularity would be injurious to the- plaintiff but beneficial to the defendant, as.the judgment might be-a bar to any future action. But in. this case,, where. *291 there can be but one breach, the form is not essential for the preservation of the plaintiff’s rights, since the bond is satisfied by this recovery; nor can it be essential for the defendant, as “the remedy has extended to the whole injury, and the action can in no form be repeated.”
It is objected, indeed, that if the plaintiff delays his recovery of the judgment, the accruing interest may exceed the penalty. ■ The answer is obvious. The court sees that the damages and interest, to the date-of the judgment, fall far short of the penalty; and as to the interest subsequent to the judgment, the plaintiff might recover that by action of debt upon the judgment, even if the jury had not allowed it. Besides, in the case of Pate v. Spotts, the same error (if' it be one) was not deemed tenable, even by the able.: and veteran counsel for the appellant.
I am of opinion to affirm the judgment.
Per Ouriam—Judgment affirmed.

 As the question is as to a new trial, a reference to that paper is proper.—Note by the president.