## Richmond.

### STUART v. PENNIS.

#### November 20, 1902.

1. EVIDENCE—*Relevancy—Contract to Sell Growing Trees—Conveyance to a Third Person After Breach.*—In an action by a vendee against his vendor to recover damages for a breach of a contract for the sale of growing trees, evidence that five years after breach the vendor conveyed a portion of the land on which the trees were standing to a third person is irrelevant, and should be excluded.

2. DAMAGES—*Contract to Sell Growing Trees—Breach—Measure of Damages.*—Growing trees are regarded in this State as real estate, and, in an action by a vendee against his vendor to recover damages for a breach of a contract for the sale and delivery of such trees, the measure of damages, according to the Virginia doctrine, is, as a general rule, the purchase money actually paid, and interest thereon, and not the difference between the contract price and the market value at the time of the breach. The evidence in the case in judgment does not bring it within either of the exceptions laid down in *Wilson* v. *Spencer*, 11 Leigh, 271.

Error to a judgment of the Circuit Court of Russell county, rendered August 10, 1900, in an action of assumpsit wherein the plaintiff in error was the plaintiff, and the defendant in error was the defendant.

*Affirmed.*

The opinion states the case.

*J. J. Stuart* and *W. E. Burns*, for the plaintiff in error.

*W. W. Bird* and *Henry & Graham*, for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

Opinion.

This is a writ of error to a judgment in an action of trespass on the case in assumpsit on a contract entered into between plaintiff in error, D. C. Stuart, and defendant in error, Mrs. S. P. Pennis, on the 24th day of December, 1892, for the sale and purchase of standing timber, at a stipulated price per tree. It is the sequel of a suit in equity between the same parties, which was twice appealed to this court; once in 1895, when it was determined that the growing trees constituted a part of the soil, and that the contract was for such an interest in land that a bill for its specific enforcement would lie—*Stuart* v. *Pennis*, 91 Va. 688; again in 1899, when the decree of the Circuit Court, dismissing complainant's bill, upon its merits, was affirmed, after being amended so as to permit him to bring his action at law upon the contract if he should be so advised, 1 Sup. Ct. Rep. 450. Whereupon, plaintiff in error instituted this action, and his declaration, besides the common counts in assumpsit, contains a special count upon the express contract of the parties, as follows:

"And for this also: that whereas the plaintiff and defendant entered into a contract which is in the words and figures following, to-wit:

CONTRACT.

'Bought of Mrs. S. P. Pennis all popular timber between her residence and Mrs. E. C. Carter's, and between the Meade road and the Jessee's Mill road, and running with the top of Copper Ridge, and measuring twenty-four inches in diameter inside the bark, and up, and as much as thirty-two feet of merchandise timber at three dollars per tree, and all other poplar on her place of the same measurements and specifications, at two dollars per tree. Also white oak, ash and cucumber trees on her place, of same dimensions, at one dollar and fifty cents per tree.

'All timber is to be free from knots, and all other visible defects. Three years is the time allowed for removing timber

.from land.   One hundred dollars is to be paid January 1, 1893, and the remainder to be paid as the timber is taken away.   The timber is to be inspected and marked as soon as practicable.'

'December 24, 1892.'

"And the plaintiff and defendant having entered into, signed and delivered each to the other in duplicate, the contract as above set out, the plaintiff afterwards, to-wit: on the 2d day of January, 1893, attempted to inspect and mark the timber sold by said contract, but was prevented and prohibited by the defendant from doing so.

"And the plaintiff afterwards, to-wit: on the 3d day of January, 1893, tendered to the defendant the sum of one hundred dollars, the amount to be paid to the defendant by the plaintiff under the terms of the contract aforesaid, whereupon the defendant refused to receive it, or to in any way comply with her said contract.   Thereupon the plaintiff deposited the said sum in bank to the credit of the defendant, and notified her of such deposit.

"The plaintiff further avers that he has at all times been ready and willing to perform said contract, and has offered to do all things incumbent upon him by the terms thereof.   The defendant hath refused, and still doth refuse to perform the contract on her part, or to do any of the things incumbent upon her to do, by the terms thereof, to the damage of the plaintiff $2,500.

"And therefore he brings his suit."

At the trial, upon defendant in error's plea of *non assumpsit*, plaintiff in error introduced evidence as to the market value of the timber at the time of the contract and at the date of the breach thereof, which evidence, upon motion of defendant in error, the court excluded, on the ground that the contract price was the measure of damages recoverable in the case, and not the difference between the contract price and the real value at

the date of the contract, or the market value at the time of the breach, to which ruling plaintiff in error excepted.

Plaintiff in error also offered in evidence a deed from defendant in error to one Mason, dated November 14, 1896, conveying a part of the land upon which a portion of the timber referred to in her contract with plaintiff in error of December 24, 1892, set out above, is located, to the introduction of which deed defendant in error objected, and the objection was sustained, and plaintiff in error again excepted. These two exceptions are made the grounds, respectively, of plaintiff in error's first and second assignments of error, and will be considered in inverse order.

With reference to the second assignment of error, it is only necessary to say, that as the deed was not executed until nearly five years after the breach of the contract sued on, it was irrelevant, and was, therefore, properly excluded.

The subject matter of the contract being real estate—*Stuart* v. *Pennis, supra*—the general rule pertaining to damages recoverable by a vendee from a vendor, on a breach of a contract for the sale and conveyance of real estate, or for a breach of a covenant to warrant the title to real estate conveyed, is applicable, unless the case can be brought within some exception to the general rule.

In *Thompson* v. *Guthrie*, 9 Leigh, 101, following *Stout* v. *Jackson*, 2 Rand. 132; *Threlkeld* v. *Fitzhugh*, 2 Leigh, 451; *Mills* v. *Bell*, 3 Call, 320; and the leading English case of *Flureau* v. *Thornhill*, 2 W. Blacks. 1078, it is shown that the rule is as applicable to executory contracts as to those executed, and that the vendee is not entitled to more damages than the purchase money he has actually paid and interest thereon. "For this," says the opinion, "he ought to be compensated, if the land falls in value; and no more than compensated, if it rises. Such a rule offers no temptation to the vendor to violate his contract, because if he has a good title the vendee can claim specific per-

formance in a court of chancery, instead of bringing his action at law."

It is true, as pointed out in the argument of the case at bar, the doctrine announced in *Flureau* v. *Thornhill* and *Thompson* v. *Guthrie* has not been uniformly followed in the Supreme Court of the United States and several of the State courts, but it has been recognized as a settled doctrine in a number of decisions by this court: viz., *Wilson* v. *Spencer*, 11 Leigh, 271; *Newbrough* v. *Walker*, 8 Gratt. 16; *Chick* v. *Green*, 77 Va. 835; *Sheffey* v. *Gardiner*, 79 Va. 313; *Abernathy* v. *Phillips*, 82 Va. 769; *Conrad* v. *Effinger*, 87 Va. 59; and *Roller* v. *Effinger*, 88 Va. 641.

It is contended, however, that the rule does not extend to the case of a party who simply refuses to perform his contract in order to secure a more advantageous bargain; and *Wilson* v. *Spencer, supra,* is relied on as sustaining this view. The opinion of the court in that case, instead of departing from or qualifying the rule laid down in *Thompson* v. *Guthrie, supra,* distinctly recognized it as well established, and sustained the ruling of the lower court allowing proof as to the value of the land at the time of the breach, upon grounds that do not exist in the case at bar, viz.: First, the vendor, having title to the land, in bad faith disabled himself to perform his contract to convey to his vendee by conveying to another; second, the action was upon a bond conditioned to convey a tract of land, the breach assigned being a failure to convey, and there was no agreed price stated in the bond; and, third, the defendant, instead of objecting to the proof offered by the plaintiff as to the value of the land at the time of the breach, entered into the controversy as to the value at that period and offered evidence to reduce the price at that date.

The elaborate opinion adheres to the rule laid down in *Thompson* v. *Guthrie,* but treats the case then under consideration as coming within an exception to that rule.

Mr. Minor, discussing this subject, and citing a number of authorities, among which are the Virginia cases to which we have referred, including *Wilson* v. *Spencer*, *supra*—2 Minor's Insts. 865—says: "But nothing can be allowed for the loss of a bargain, even though there may have been an actual increase in the market value of the land, and much less where the loss is of a purely speculative character, as of profits which he (the plaintiff) might *perhaps* have realized by advantageous employment of the property, or otherwise." Again on p. 866, it is said: "And it will be observed that, for the most part, the best standard whereby to determine the value of the land is the purchase money," citing, among others, the case of *Wilson* v. *Spencer*. He then sets out, as held in *Wilson* v. *Spencer*, that an exception to the rule is where the vendor's breach of contract results not from his misfortune in proving to be not entitled to land of which he believed himself to be the owner, but from his misconduct, or from his undue precipitancy, as, for example, where he had subsequently conveyed to another person; or where he has entered into a contract to sell before he had himself acquired title to the land.

Suppose then it were conceded in this case that plaintiff in error, under the declaration he has filed, had the right to have the jury consider the evidence adduced by him to show a purpose on the part of defendant in error, in refusing to perform her contract, to secure a more advantageous bargain, was it sufficient to take the case from the control of the general rule we have been discussing, and bring it within the exception stated by Mr. Minor, and in *Wilson* v. *Spencer?* We think not. The contract sued on states the price of the timber per tree as agreed on between the parties. Defendant in error owned the timber and the land upon which it stood when she entered into the contract, and still owned both at the time of its alleged breach, and the special breach alleged is that plaintiff in error "on the 2d day of January, 1893, attempted to inspect and mark the

timber sold by the said contract, but was prevented and prohibited by the defendant from doing so." If there be any evidence in the record from which it might perhaps have been inferred that defendant in error "for the purpose of making a more advantageous bargain" refused to allow the timber to be inspected and marked, it appears in her letter of January 2, 1893, introduced in evidence by plaintiff in error, addressed to him as "Dear Dale," in which she says: "I have decided to ask you to let me out of our timber trade. . . . . My neighbors, I hear, are selling poplar trees at $5; besides this, I need the money for my timber at once. You can spend your time as profitably in some other affair and let me keep my timber and get more for it, if I can, from somebody else. . . . ." A letter of later date, also introduced by plaintiff in error, shows that she thought he had released her.

Viewing the case, therefore, in the light of the facts and circumstances surrounding it, including those intended to be shown by the evidence ruled out by the learned judge below, we see nothing to take the case from the control of the general rule that the measure of damages is the contract price, and not the difference between the contract price and the market value of the property at the time of the breach.

Plaintiff in error having admitted at the trial that he had gotten back the $100 deposited by him in the bank to the credit of defendant in error, and, therefore, had paid nothing on the contract, the verdict of the jury is in accordance with the law and evidence in the case, and the judgment is affirmed.

*Affirmed.*