# Richmond

## W. W. SPRUILL v. JOHN C. SHIRLEY.

January 24, 1944.

Record No. 2724.

Present, Campbell, C. J., and Hudgins, Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*W. R. Ashburn*, for the appellant.

*F. E. Kellam*, for the appellee.

SPRATLEY, J., delivered the opinion of the court.

W. W. Spruill, sixty-eight years old, had been a farmer in Princess Anne county, Virginia, for twenty years. Although he was unable to read and write, he had operated a merchandise store and had had many business dealings. In 1940, he married for the third time, and moved to Norfolk city. He then decided to sell the ninety-acre farm on which he had been living in Princess Anne county. His first wife had been dead for some years and he had been divorced from his second wife. He had six children by his deceased wife,

Ellora Spruill, all of whom were adults, married, and lived apart from him.

After some negotiations and much haggling as to the purchase price, he agreed to sell the farm to John C. Shirley for $3,000, and signed by his mark a memorandum to this effect, dated October 7, 1940. Under this agreement, $25 was paid in cash; $475 was to be paid when the deal was to be closed on October 9th; and the balance of $2,500 was to be paid on January 1, 1941.

Shirley employed F. E. Kellam, a prominent attorney in Princess Anne county, to examine the title to the farm. The examination disclosed that the property had been conveyed to Spruill and his deceased wife, Ellora, jointly, and that, therefore, Spruill owned only an undivided one-half interest in the land and the right of curtesy in the other one-half, and the remaining interest was owned by his six adult children.

On October 9, 1940, the date on which the transaction was to be completed, Spruill signed a letter directed to Shirley, advising him of the result of the examination of the title. He stated that he was not aware of the situation disclosed and could not that day give the purchaser a good title; but *hoped* to be able to do so within a short time after he had gotten in touch with his children. Spruill claimed that he had paid the purchase money for the property, and had overlooked the fact that it had been conveyed to him and his deceased wife jointly.

The necessary deed was then prepared by Mr. Kellam from the information given to him by Spruill as to the names and addresses of his children. The deed was a general warranty deed, and W. W. Spruill, Margaret Spruill, his wife, and the six children of Spruill with their respective consorts, were named as the grantors of the land.

None of the children of Spruill knew that they had any interest in the property. When they were informed of their interest therein, and requested to sign the deed, they demurred. Three of them said they wanted $100 each for their respective interests, which Spruill, after some negotiations, agreed

to pay them under the conditions outlined in the following letter, prepared by Kellam, dated November 20, 1940:

"I hereby agree to pay each of you the sum of $100 each for you to sign the deed to Cecil Shirley for property in Blackwater, title in the name of my former wife and myself, as soon as suit can be consummated for a sale of this property and a good title delivered to Mr. Shirley and the purchase price collected from Mr. Shirley."

Three of the children, their wives and husbands, signed the deed; but with the understanding that it was to be signed by all of the children before it should become effective. Three of the children declined to sign. Mr. Kellam, who represented both Spruill and Shirley, then advised his clients that Spruill could not give Shirley a good title to the property; but that a good title could probably be obtained in a partition suit.

On November 19, 1940, Spruill signed a letter written by Kellam and directed to Kellam, authorizing him to proceed with such a suit.

On November 5, 1941, Kellam filed a memorandum for the issuance of process in this suit, the proceeding being styled W. W. Spruill and Margaret Spruill and John C. Shirley against the three adult children of Spruill, who had not signed the deed.

On November 29th, Kellam altered the instrument of conveyance by striking out the names of the children who had not signed the deed and the acknowledgment forms which had been prepared for them, and placed the deed on record in the clerk's office of Princess Anne county.

The bill, signed by the attorney for the complainants, was filed December 17, 1940. It was a simple partition suit, in which it was stated that its object was to secure, through the court, a partition of the farm in the manner prescribed by statute, preferably by a sale of the whole and a division of the proceeds of the sale among the owners according to their interests.

On April 7, 1941, Spruill and his wife, having repudiated their contract of employment with Kellam, moved the court,

through another attorney, to transfer them from complainants to defendants in the pending suit. This motion was granted and the change was made.

Spruill then filed an answer and cross-bill admitting that he had entered into a contract with Shirley to sell the farm at $3,000; but claiming that the contract was made under the mistaken impression that he owned the whole property. He alleged that there had been no meeting of the minds of the parties, and asked that he be relieved from the contract. He also denied that he had authorized Kellam to bring the partition suit in his name.

On their application the three children who had signed the deed were permitted to intervene and were made parties defendant, and signed cross-bills asking to have the deed declared void as to them, upon the ground that it had been signed by them with the understanding that it was not to be delivered unless all of the children signed. The three children who had not signed the deed filed answers denying Spruill's right to compel partition of the property.

To the answer and cross-bill of Spruill, Shirley filed an answer, in which he alleged, in part:

"And the plaintiff states in answer to the cross bill of W. W. Spruill that there was a meeting of the minds of the parties, that the entire transaction was thoroughly understood between W. W. Spruill and John C. Shirley and that the said W. W. Spruill should be required to secure the interest of the other parties in said land as he agreed to do, or pay to the said John C. Shirley any and all damage and cost by reason of his failure to deliver deed for said farm as agreed."

The testimony was heard *ore tenus* by the trial judge on June 18, 1941. The learned chancellor, on November 5, 1941, entered a decree holding that: (1) The deed from Spruill and wife was sufficient to convey Spruill's interest in the property to Shirley, that is, an undivided one-half interest and the right of curtesy in the other one-half; (2) the deed was executed without a valid consideration by the three children who had signed it, and as to them the deed

was without effect; (3) since Spruill was the owner of an undivided one-half interest in the land which was not susceptible of division in kind, it should be sold; (4) appointed commissioners to make sale; and (5) reserved "all other matters."

From that decree Spruill and his children applied to this court for an appeal, assigning numerous grounds of error. We refused the appeal on February 25, 1942, thereby affirming the conclusion of the chancellor on all of the matters above determined.

Thereafter the special commissioners offered the property for sale at public auction on March 26, 1942, at which sale John C. Shirley became the last and highest bidder, and it was knocked down to him for the sum of $4,900. The result of the sale was, on May 21, 1942, reported to the trial court. There being no exceptions to the report, the chancellor, by decree entered on the same date, approved and confirmed the sale to Shirley and directed that "upon the payment of $4,900, less $950, the present equity in the one-half interest belonging to John C. Shirley," the special commissioners should execute and deliver a deed to Shirley, pay the cost of the sale from the funds in their hands, and report their proceedings. Accordingly, on the same day, the commissioners reported the receipt of $3,950, net, from Shirley and the delivery of a deed to him. The report stated that, after payment of the cost of sale amounting to $301.07, there remained in their hands $3,648.93, the beneficial owners thereof being:

W. W. Spruill, one-half interest, less equity deducted for Shirley ......................$1,324.47
W. W. Spruill, for value of his curtesy interest in the other one-half...................... 289.87
Six children of Spruill...................... 2,034.59

Total............................$3,648.93

The sum of $271.42 was reported as the costs of the cause.

The cause again came on to be heard on the same day, May 21, 1942, on the last mentioned report, and thereupon Shirley moved the court to award him damages for the failure of Spruill to make good title to the whole property. No evidence was taken, but the motion was argued. Thereupon the court, by its decree of that date, reciting that whereas Shirley had been compelled to pay $950 more for the farm than the sum at which Spruill had agreed to sell it to him, adjudged that Shirley recover of Spruill the further sum of $950 as and for his damages, to be paid out of the portion of the funds in the hands of the commissioners accruing to Spruill. The court costs, $271.42, were directed to be paid out of Spruill's funds, thus leaving only the sum of $392.92 to be received by Spruill for his one-half undivided share of the farm and his curtesy right in the remaining half.

Spruill has perfected this appeal from so much of the last mentioned decree as awards damages to Shirley. We thus have under review the right of the purchaser of real estate to recover from the vendor damages for the loss of his bargain.

It is conceded that, in Virginia, we have adopted the rule enunciated in *Pumpelly* v. *Phelps*, 40 N. Y. 59, 100 Am. Dec. 463, that; "Where, * * * the vendor contracts to sell and convey, in good faith, believing he has a good title, and afterwards discovers his title is defective, and for that reason, without any fraud on his part, refuses to fulfil his contract, he is only liable for nominal damages for a breach of his contract. (Citing cases.) The rule is otherwise, however, where a party contracts to sell land, which he knows, at the time, he has not the power to sell and convey; and if he violates his contract in the later case, he should be held to make good to the vendee the loss of his bargain, and it does not excuse the vendor, that he may have acted in good faith and believed, when he entered into the contract, that he should be able to procure a good title

for his purchaser." *Stuart* v. *Pennis*, 100 Va. 612, 42 S. E. 667; *Matthews* v. *LaPrade*, 130 Va. 408, 107 S. E. 795; *Davis* v. *Beury*, 134 Va. 322, 114 S. E. 773, 115 S. E. 527; *Greer* v. *Doriot*, 137 Va. 589, 120 S. E. 291; *Boston* v. *DeJarnette*, 153 Va. 591, 151 S. E. 146.

The appellee contends that the latter portion of the rule applies in this case because he says that Spruill, the vendor, contracted to make good title to the land after he knew or should have known that he could not comply with his original undertaking.

We do not think the evidence justifies the appellee's contention. It is apparent that Spruill, at the time he first entered into the contract of sale, did not know his children had an interest in the property. The evidence and his letter of October 9, 1940, to Shirley, set this out clearly. The letter was not an unconditional agreement to make good title regardless of the situation. It merely expressed Spruill's "hope" to secure a clear title for Shirley. It served notice upon Shirley that Spruill, without the concurrence of his children, could not convey good title to the entire land. At no time after he discovered he was not the sole owner of the land did Spruill warrant his ability to convey the entire interest therein.

The vendor, in good faith, undertook to get his children to make a conveyance of the land at the price agreed on. In this he was assisted by an attorney, who represented both parties. Accordingly, a deed was prepared by that attorney, in which the names of the children were recited as grantors of their respective interests.

When all of the children refused to execute the deed, Spruill and the vendee cooperated, following the advice of their joint counsel, in instituting this suit, which was a simple partition suit in the ordinary form, with the usual prayers. Thus, both vendor and purchaser knew, at that time, that the sale of the land as a whole depended upon the approval of the court and not upon the ability or the right of Spruill to make such conveyance. There was no fraud on the part of Spruill, either alleged or proven, nor any indication that

he voluntarily disabled himself from making the conveyance. On the other hand, it is perfectly clear that he desired to carry out this contract and was prevented from doing so only by the circumstances related.

While the foregoing views make it unnecessary to discuss other assignments of error, it may be, moreover, stated that, even if we were to concede that there was any warrant in the pleadings for an award of damages, the evidence of the vendee and four qualified witnesses in the partition suit fixed the fair market value of the property at the time of the breach of Spruill's contract on October 9, 1940, and at the date of their testimony in June, 1941, as $3,000, a top price. The fact that it brought a larger sum at the sale on March 26, 1942, does not establish its market value at the former dates, since the increase in the sale price may readily have been due to the changed circumstances and economic conditions which prevailed at the later date.

We are of opinion that the trial court erred in awarding damages to John C. Shirley, and we, therefore, reverse the decree of the trial court in so far as that award is concerned and remand these proceedings to the lower court, with the direction that it direct the payment of the sum of $1,342.92 to W. W. Spruill as the correct total balance due him for his one-half share in the land and his curtesy interest in the other half.

*Reversed and remanded.*