Syllabus.

## Wytheville.

## WOLFORD AND OTHERS V. JACKSON AND OTHERS.

### June 13, 1918.

1. MERGER—*Vendor and Purchaser.*—The appellees gave the appellants an option to purchase a certain tract of land, within sixty days, at a certain price. This option was closed by a letter addressed to a bank, signed by all the parties, which, in some respects, varied the terms of the option contract, and constituted the final agreement of the parties for the sale and purchase of the land.

    *Held:* That the option contract was merged in the contract evidenced by the joint letter of the parties to the bank.

2. VENDOR AND PURCHASER—*Contract of Sale—Waiver.*—Under a contract for the sale of land, the vendees refused by letter the deed tendered them by the vendors on the ground that its description of the land did not definitely identify it, but stated that if the vendors were "willing to furnish us a plat and to make the same a part of the deed, which plat will definitely show the lines, we are willing to pay the purchase price agreed upon."

    *Held:* That whatever might have been the rights of the vendees under the contract, they waived everything but a single point by this letter and staked their whole case on their right to demand a deed containing a better description of the land than that contained in the deed tendered.

3. VENDOR AND PURCHASER—*Deeds—Description of Land.*—Where under a contract of sale, the vendors tendered a deed containing the same description of the land as that contained in the contract of sale and in every deed previously conveying the land, and the land could be readily and adequately identified from the description given, the vendees could not refuse to receive the deed on the ground that the description of the land was insufficient, in that it did not show the number of feet or chains on the boundaries, and demand a survey and plat to be made a part of the deed.

4. SPECIFIC PERFORMANCE—*Transfer of Land by Vendors—Parties to Suit.*—Where vendors, seeking to enforce specifically a contract of sale against the vendees, had transferred the property

to a holding company with full notice of the rights of all the parties, and without consideration, the holding company occupying the position of a mere trustee, the vendors had a sufficient interest in the property to maintain suit for specific performance in their own names.

5. SPECIFIC PERFORMANCE—*Tender of Deed—Necessity.*—Whether or not a vendor in a suit for specific performance must tender a deed with his bill must be regarded as an open question in this State, but in the case at bar, as the vendees declined to accept any deed that did not contain the courses and distances of the land, and this the vendors had the right to decline to give it would have been futile to have required the tender of a deed which the purchasers had declared in the most explicit terms they would not accept.

6. VENDOR AND PURCHASER—*Sufficiency of Deed—Execution by Vendors.*—The mere fact that the contract of sale stipulated that the vendors would execute and deliver, or cause to be executed and delivered a deed with covenants of general warranty, would not release the vendors from their personal obligation to unite in the conveyance and covenants. Unless the contract expressly provides that the deed shall be made by a third person, it must be made by the vendor himself.

7. VENDOR AND PURCHASER—*Sufficiency of Deed—Execution by Vendors.*—In the case at bar, however, the complainants stated in their bill that they have at all times been ready, willing and able to comply with the terms of their agreement, and that the holding company was willing and able to convey the land to the defendants upon their compliance with the terms of the contract; and the bill contains the usual prayer for general relief. Therefore it was entirely competent for the court, with all the parties before it, and in pursuance of the prayer for general relief to require the vendors to unite with the holding company in a deed conveying the land to the defendants with covenants of general warranty of title.

Appeal from a decree of the Circuit Court of city of Williamsburg and county of James City. Decree for complainants. Defendants appeal.

*Amended and Affirmed.*

The opinion states the case.

*Frank Armistead,* for the appellants.

36

*Henley, Hall, Hall & Peachy,* for the appellees.

BURKS, J., delivered the opinion of the court.

This is a suit for the specific performance of a contract for the sale of real estate. Louis J. Hansen, who was the owner of a tract of thirty-five acres of land near the city of Williamsburg, gave to the appellees, E. P. Jackson and H. P. Hammond, on February 28, 1916, an option to purchase this land, within three months, at the price of $4,250, of which the sum of $50 was paid in cash, and for the residue of which credits were extended. On March 8, 1916, the appellees, Jackson and Hammond, gave the appellants an option to purchase the same land, within sixty days, at the sum of $7,000, of which sum appellants paid $500 in cash, and for the residue credits were extended. On May 8, 1916, this latter option was closed by a letter addressed to the Bank of Williamsburg, signed by all of the parties, and which is as follows:

"May 8, 1916.
"Bank of Williamsburg, Inc.,
    Williamsburg, Va.
"Gentlemen:

"We hand you herewith $1,250.00 and a contract between F. P. Jackson and H. P. Hammond, of the one part, and J. M. Wolford, Wm. F. Downing and Benj. Fisch, of the other part.

"You are to hold this money and contract until Mr. Frank Armistead, attorney at law, of Williamsburg, Virginia, can examine the title to this property, and as soon as said examination can be made and Mr. Armistead accepts said title, then the said J. M. Wolford, Wm. F. Downing and Benj. Fisch are to pay you $2,500 and to execute notes for the payment of the balance of the purchase price of said

property, according to the terms of said contract, and to execute a deed of trust conveying said property in trust to secure the payment of said note; and you are to turn over to the said E. P. Jackson and H. P. Hammond said $3,750.00 and a deed of trust and the note therein secured, upon the said F. P. Jackson and H. P. Hammond executing, and delivering, or causing to be executed and delivered, a good and sufficient deed, with general warranty, conveying said real estate to the said J. M. Wolford, Wm. F. Downing and Benj. Fisch.

"If said title is not found clear, and cannot be made good, then you are to return said $1,250.00 to J. M. Wolford.

"Title to be examined in ten days from the date hereof."

This letter, in some respects, varied the terms of the option contract, and constituted the final agreement of the parties for the sale and purchase of the land. The title was promptly examined by Mr. Armistead, but some delay was occasioned in clearing up and removing minor defects found to exist in the title. The title, however, was finally rendered acceptable, and the vendors procured from Louis J. Hansen a deed conveying the land, with general warranty, to the appellants, and the vendors executed a quit-claim deed of the property to the appellants, and delivered both deeds in escrow to the Bank of Williamsburg. The appellants, thereupon, executed and delivered to said bank the deed of trust to secure the deferred payments of purchase money called for by their contract, but failed to deliver to said bank either the money or the notes called for by said contract. When pressed to complete the performance of their contract, the appellants refused to do so on the ground that the deed from Hansen conveying the land to them did not give the metes and bounds of the land conveyed, and on June 12, 1916, they addressed the following letter to Jackson and Hammond:

"Williamsburg, Va., June 12, 1916.
Messrs. F. P. Jackson and H. P. Hammond,
        "Williamsburg, Va.

"Gentlemen:

"We are ready and willing to comply with our contract to purchase from you the thirty-five acres tract of land which you purchased or agreed to purchase, from Lewis J. Hansen, but the description in the deed which has been deposited in the Bank of Williamsburg is not such description of the land that we could take the deed and identify the land, as there are no corners or definite boundaries given, and under our contract we claim that we are entitled to a deed definitely describing the land which we are purchasing, and therefore demand a deed showing the number of feet or chains that this land fronts on the road, and the number feet or chains on the other boundaries. As the description in the deed from Hansen, and the description in the deeds through which Hansen claims, are so indefinite, we do not see how you can give us a deed that would sufficiently describe this land unless the land is surveyed and platted and the survey and plat made a part of the deed.

"If you are willing to furnish us a plat, and to make the same a part of the deed, which plat will definitely show the lines, we are willing to pay the purchase price agreed upon. If such a deed is not furnished within five days, we will consider the deal off and will demand that our money be refunded.

                        "Yours truly,

                                "J. M. WOLFORD,
                                "WM. F. DOWNING,
                                "BENJ. FISCH."

It will be observed that the contract does not call for any plat or survey, and the statement of the letter is simply that appellants *claim* that under the contract they are entitled to a more definite description of the land. The ven-

dors refused to furnish the plat called for, and thereupon all further negotiations between the parties ceased. The vendors then procured from Hansen and placed upon record a deed conveying the land to the Power City Investment Company, and a few days thereafter instituted this suit in their own names for a specific performance of the contract of sale. Jackson and Hammond and one other person were the only stockholders of the Power City Investment Company, and were its officers. The company was a mere holding corporation of the title of real estate purchased by Jackson and Hammond, and had no other interest in the property. All of the officers and stockholders of the company had full notice of the whole transaction. The Power City Investment Company was made a party defendant to this suit and filed its answer, which contains the following statement:

"True it is that on the 12th day of June, 1916, Lewis J. Hansen conveyed to this respondent the real estate mentioned and described in said bill; and that this respondent is the holding company of the complainants in the conduct of their real estate business. This respondent avers that it is ready, willing, able and anxious to convey the real estate mentioned and described in said bill to J. M. Wolford, Wm. F. Downing and Benjamin Fisch, upon their complying with the terms of their agreement entered into between them and the complainants, on the 8th of May, 1916."

From a decree in favor of the complainants, this appeal was allowed. The case lies within narrow limits, and it will be unnecessary to consider many of the questions discussed on the argument. The option contract of March 8, 1916, was merged in the contract of May 8, 1916, evidenced by the joint letter of the parties to the Bank of Williamsburg. The latter is the contract sought to be enforced. Whatever may have been the rights of the appellants under

this contract, they waived everything but a single point by their letter of June 12, 1916, and staked their whole case on their right to demand a deed containing a better description of the land than that contained in the deed tendered, and say, "if you are willing to furnish us a plat and to make the same a part of the deed, which plat will definitely show the lines, we are willing to pay the purchase price agreed upon." The appellants had no right to demand a plat, and the vendors were under no obligation to furnish it. Every deed previously conveying this land, the option under which Hansen sold, and the option under which appellants bought, all described the land as: "All of that certain tract of land lying and being in Bruton district, York county, State of Virginia, containing thirty-five acres, more or less, and bounded as follows: On the west by the Old Free road; on the north by the land of the Old Dominion Land Company; on the east by the land of Neils P. Peterson, and on the south by the land of Anton Rasmussen;" and the evidence shows that the land could be readily and adequately identified from the description given. The deed tendered, therefore, contained a sufficient description to convey the land purchased by the appellants. *Merritt* v. *Bunting,* 107 Va. 174, 57 S. E. 567, 12 Ann. Cas. 954, and cases cited.

Objection was made that Jackson and Hammond could not maintain this suit in their own names because they had no interest, legal or equitable, in the subject-matter thereof; and that their entire interest was transferred to the Power City Investment Company by the deed to it from Hansen. But this is a mistaken view of the situation. The Power City Investment Company took its deed with full notice of the rights of all the parties, and without consideration. It held the property in trust, for the benefit of Jackson and Hammond, and subject to the rights of the parties under the contract of May 8, 1916. It occupied the position of a mere trustee. *Cummins* v. *Beavers,* 103 Va. 230, 48 S. E.

891, 106 Am. St. Rep. 881, 1 Ann. Cas. 986. See also text and cases cited 36 Cyc. 761; Waterman Spec. Per., pp. 725-6; Bispham's Eq., pp. 424-5.

The further objection is made that the vendors did not tender any deed with their bill. Whether or not such a tender is necessary must be regarded as an open question in this State (*Whitten* v. *Saunders*, 75 Va. 563, 570; *Wood* v. *Walker*, 92 Va. 24, 22 S. E. 523, 1 Va. Law Reg. 442), but it need not be now decided, as the appellants declined to accept any deed that did not contain the courses and distances of the land, and this, as we have seen, the vendors had the right to decline to give. It would have been futile to have required the tender of a deed which the purchasers had declared in the most explicit terms they would not accept. *White* v. *Dobson*, 17 Gratt. (58 Va.) 262; *Matney* v. *Barnes*, 116 Va. 713, 82 S. E. 801. See also text and cases cited, 36 Cyc. 705; Waterman Sp. Per., secs. 446, 450.

The next assignment of error is that this suit is an effort on the part of the vendors to force the appellants to accept a deed from the Power City Investment Company, with whom it did not contract, and whose conveyance and covenants it never agreed to accept. The mere fact that the contract stipulated that the vendors would execute and deliver, or *cause to be* executed and delivered a deed with covenants of general warranty, would not release the vendors from their personal obligation to unite in the conveyance and covenants.

"It is generally held that unless the contract expressly provides that the deed shall be made by a third person, it must be made by the vendor himself, even though the words of the contract are that the vendor execute or cause it to be executed." *Gottschalk* v. *Meisenheimer*, 62 Wash. 299, 113 Pac. 769, 115 Pac. 79. To the same effect, see *Steiner* v. *Zwickey*, 41 Minn. 448, 43 N. W. 376; *Birmingham Matinee Club* v. *McCarthy*, 152 Ala. 571, 44 So. 642, 13 L. R. A. (N. S.) 156, 15 Ann. Cas. 237; *James* v. *Burchell*, 82 N. Y. 109.

But we do not construe the bill in this case to be an effort on the part of the vendors to evade any responsibility imposed upon them by their contract. They state in their bill that they have at all times been ready, willing, able and anxious to comply with the terms of their agreement, and that the Power City Investment Company, which is a mere holding company for the complainants, is ready, willing, able and anxious to convey the land to the appellants upon their compliance with the terms of their contract; and the bill contains the usual prayer for general relief. It was entirely competent for the court, with all of the parties before it, and in pursuance of the prayer for general relief, to have required the vendors to unite with the Power City Investment Company in a deed conveying the land to the appellants with covenants of general warranty of title. This would have given the appellants more than they claimed in their letter of June 12, 1916, and all they could have claimed even if the waiver contained in said letter were not binding on account of a failure to accept its terms, or the lack of consideration; and this we think the trial court should have done.

Since the appeal in this case was allowed, all of the purchase money for the land has become due, which will necessitate some changes in the decree appealed from. The case will, therefore, be remanded to the circuit court, with directions to amend its former decree by requiring the appellees, E. P. Jackson and H. P. Hammond, and the Power City Investment Company to execute, acknowledge and in all respects make ready for recordation, and file amongst the papers in the cause a deed, with covenants of general warranty on the part of Jackson and Hammond, conveying to the appellants the tract of thirty-five acres of land in the proceedings mentioned by the description given in their option contract, with liberty to the appellants to withdraw the same upon payment of the balance of the purchase

money therefor, giving the vendors the right to collect the money which was deposited in the Bank of Williamsburg, and rendering a personal decree against the appellants for the balance of the purchase money due by them and the costs of the suit, and decreeing a sale of the land in case of default in the payment of such personal decree within such reasonable time as it may prescribe.    The decree of the circuit court, as thus amended, will be affirmed.

*Amended and affirmed.*