# Richmond.

## J. W. AND C. M. BOSTON v. E. H. DEJARNETTE, ET ALS.

January 16, 1930.

Absent, Chichester and Epes, JJ.

592

The opinion states the case.

*McGuire, Riely & Eggleston,* for the appellants.

*V. R. Shackelford* and *E. H. DeJarnette, Jr.,* for the appellees.

CAMPBELL, J., delivered the opinion of the court.

This is an appeal from a decree of the Circuit Court of Orange county, pronounced on the 5th day of May,

1928, in a suit in chancery wherein the appellant, J. W. Boston, and others were complainants, and E. H. DeJarnette, Virginius R. Shackelford and W. W. Briggs were the defendants.

John T. Boston, many years ago, died intestate, seized and possessed of 723½ acres of land, leaving surviving him six children, viz: John W. Boston, C. M. Boston, Seymour Boston, Mrs. Lillie Leighton, Mrs. Annie Tenney and Mrs. Mary Clark, who as his heirs-at-law inherited the said real estate. It being the desire of the heirs to sell the land, the same was in the year 1915 listed for sale with W. W. Briggs, a real estate agent residing in Madison county. Briggs succeeded in interesting several parties in the land with a view to purchasing same, but in each instance, upon objection by some one of the heirs, the sale was not consummated.

It clearly appears from the record, we think, that C. M. Boston, who lived in closest proximity to the land, if not the agent of the other heirs in the sale of the property, at least was their representative in looking after their interest in the same. It is shown that acting for himself and the other heirs, C. M. Boston employed counsel to bring an action for fire damages to the property; that he negotiated a settlement of the damages with the railway company and that he looked after the taxes upon the land.

On May 4, 1918, C. M. Boston executed and delivered to W. W. Briggs the following paper:

"I hereby authorize Mr. W. W. Briggs to sell the tract of land situated in Orange and Louisa counties, Virginia, known as Slate Hill Farm, containing 723 acres more or less belonging to myself and Boston heirs for the sum of fifteen thousand dollars cash, and if the sale is so actually made by him I will pay him the sum

of five hundred dollars as complete compensation for all services rendered in making such sale. This agreement is to be null and void at the expiration of thirty days (thirty) from the date thereof.

"C. M. BOSTON,

"for Himself and as Agent for Boston Heirs."

On May 26, 1918, C. M. Boston extended the time limit to June 15th. Thereupon, Briggs entered into negotiations with DeJarnette and Shackelford, who agreed to purchase the property at the price of $15,-000.00. C. M. Boston was notified by Briggs of the offer of DeJarnette and Shackelford, and Boston engaged counsel who prepared a proper deed of conveyance. This deed was actually signed by C. M. Boston, J. W. Boston, Mrs. Tenney and her husband, and the husband of Mrs. Leighton. The deed was also acknowledged by Mrs. Tenney and her husband and by Mrs. Leighton, but not by the other parties who signed it.

Following their negotiations with Briggs, and acting upon the authorization contained in the paper from C. M. Boston to Briggs, DeJarnette and Shackelford began cutting the timber upon the land. Thereupon, J. W. Boston, Seymour Boston, Mrs. Leighton, Mrs. Clark and Mrs. Tenney filed their bill of complaint in which they denied the authority of C. M. Boston to execute the alleged power of attorney to Briggs, and prayed that DeJarnette and Shackelford be enjoined from cutting the timber upon the land. To this bill of complaint appellees filed an answer and cross-bill. The prayer of the cross-bill is that C. M. Boston and complainants be required to execute a deed with covenants of general warranty of title, conveying the land to DeJarnette and Shackelford upon the payment of the purchase money and that complainants be required to pay all costs and damages resulting from the issuance

of the injunction. A number of depositions were taken relative to the alleged agency of C. M. Boston, the authority of Briggs to enter into a contract of sale with appellees, the amount due Briggs as commissions, and the amount of alleged damages due appellants.

The contentions before the trial court and before this court may be thus summarized:

DeJarnette and Shackelford contend that they are entitled to a specific performance of the contract entered into by and between Briggs, as agent of all the Boston heirs, and themselves, together with an allowance of damages resulting from the non-fulfillment of the contract.

The Boston heirs contend: (1) That W. W. Briggs was without authority from any of the parties, except from C. M. Boston, to make the alleged sale to Shackelford and DeJarnette; (2) that, even if Briggs had authority to offer the property for sale, which was denied, he was not authorized to sign the contract himself, and thus the alleged sale was not evidenced by the written contract on the part of the Boston heirs which the statute requires; (3) that the undelivered deed, signed by three of the Boston heirs, was not effective as a contract of sale even against such parties; (4) that, in any event, the transaction was to be a sale of the whole property and not of individual interests therein, and no one party was to be bound unless all were bound; (5) that specific performance rests always in the sound discretion of the court, and that the discretion should be exercised against such relief in this case, and (6) that, in any case, no damages were recoverable in this case against any of the Boston heirs.

The lower court, by its decree of May 5, 1928, which is the decree appealed from, decided as follows:

1. That W. W. Briggs was without authority to bind the Boston heirs, or any of them, by the contract dated August 8, 1918 (June 13, 1918), and that consequently no valid and enforceable contract for the sale of the land in suit was effected by that contract.

2. That the undelivered deed, dated June 14, 1918, and signed by C. M. Boston, J. W. Boston and Mrs. Annie Tenney, (a) was operative and binding as a contract by such parties for the conveyance to V. R. Shackelford and E. H. DeJarnette, Jr., of their respective original interests in the land involved, but not such interests as were acquired by the three Boston heirs named by inheritance from their deceased brother, Seymour Boston; and (b) was, of course, not effective as to the other three interests in the property, namely, those of Mrs. Clark, Mrs. Leighton and Seymour Boston's estate.

3. That Messrs. Shackelford and DeJarnette were not entitled to recover any damages from any of the parties in suit.

4. That W. W. Briggs was entitled to recover from C. M. Boston and J. W. Boston (Mrs. Tenney's interest having passed to the last named) the sum of $250.00, being three-sixths, or one-half, of the commissions of $500.00 claimed by him for his services in making the sale.

Accordingly the court decreed:

I. That the answers and cross-bills of Messrs. Shackelford and DeJarnette be dismissed, so far as they prayed for specific performance, with respect to the interests in the land in suit of Mrs. Clark, Mrs. Leighton, and Seymour Boston's estate.

II. That C. M. Boston and J. W. Boston, upon the

payment to them of pro-rata portions of the purchase money specified in the Briggs contract—$2,500.00 to C. M. Boston and $5,000.00 to J. W. Boston (covering his two interests)—should convey to Messrs Shackelford and DeJarnette a one-sixth and a one-third interest in the property, respectively.

III. That the amended answer and cross-bill filed July 7, 1922 (by which a recovery of damages was sought), so far as treated as a cross-bill, be dismissed.

IV. That C. M. Boston pay to W. W. Briggs one-third of $250.00, or $83.33, and J. W. Boston two-thirds of $250.00, or $166.67.

V. That costs be recovered on the basis specified in the decree.

The errors assigned by appellants are limited to the following:

1. "The holding by the court that the undelivered deed of June 14, 1918, was effective and binding as a contract by the petitioners for the conveyance to V. R. Shackelford and E. H. DeJarnette, Jr., of the petitioners' respective original interests in the land in suit and also for the interest of Mrs. Tenney, and the court's decree accordingly."

2. "The allowance and decree to W. W. Briggs of the sums awarded him against the petitioners, respectively, as above shown."

Appellees assign as cross-error the refusal of the court to decree a specific performance of the entire agreement of June 13, 1918, and a conveyance of the entire tract of land; the refusal of the court to award appellees damages in addition to abatement of interest; and the refusal of the court to award the sum of $500.00 to Briggs as full commissions for the sale of the land.

■■ There is no merit in the first cross-assignment of error. It is unnecessary to discuss in detail Briggs'

authority to execute the contract relied upon, as the record discloses that Briggs did not in fact execute the alleged contract until the August following, when, under the terms of the instrument, the authority granted Briggs had expired on June 15, 1918. Another reason why the assignment of error is not well founded is that the evidence is conflicting on the question of C. M. Boston's authority to execute the alleged power of attorney to Briggs. This conflict has been decided by the lower court in favor of appellants and the evidence we think supports the conclusion.

■ The next assignment of error by appellees, that the court erred in not awarding them damages, is also without merit. Even though it be conceded that appellees are entitled to a specific performance of the contract, it is the well settled general rule in Virginia that the measure of damages for the breach of a contract to convey land is the purchase money paid, with interest from the date of payment. See *Stuart* v. *Pennis*, 100 Va. 612, 42 S. E. 667; *Matthews* v. *LaPrade*, 130 Va. 408, 107 S. E. 795. No part of the purchase money has been paid by appellees, and hence no interest has accrued.

■ The allowance of part commissions to Briggs is without error. Briggs has done all in his power to effectuate a sale of the property, and but for the fact that his efforts were beyond the scope of a legal contract with the heirs, would be entitled to the full commissions claimed.

■■ Having disposed of the cross-assignments of error, we come now to a consideration of the errors assigned by appellants. The primary question is what effect is to be given to the deed signed by C. M. Boston, J. W. Boston and Mrs. Tenney, three of the Boston

heirs, as a memorandum sufficient to satisfy the requirements of the statute of frauds. (Code 1919, section 5561.)

In *Chiles* v. *Bowyer*, 127 Va. 259, 103 S. E. 619, 622, Judge Kelly approved the doctrine laid down in *Bowles* v. *Woodson*, 6 Gratt. (47 Va.) 78, and *Parrill* v. *McKinley*, 9 Gratt. (50 Va.) 1, 58 Am. Dec. 212, that an undelivered deed under a given state of facts is sufficient as a memorandum in writing to meet the requirements of the statute. In that case it is said: "Whether, as a general proposition, an undelivered deed is sufficient as a memorandum or contract in writing to overcome the statute of frauds, is a question upon which the authorities are not agreed. Perhaps the current of authority supports the negative of the general proposition. 29 Am. & Eng. Ency. L. (2d ed.) 855 ;9 Cyc. 257. But we entertain no doubt that where, as in the two Virginia cases above cited, and as in this case, it satisfactorily appears from the proof that an undelivered deed expresses the terms of a previous verbal contract between the parties, such a deed is sufficient to take the contract out of the statute, and may properly be made the basis of specific performance."

It is strenuously asserted by appellants that whatever authority Briggs had in the first instance to represent them in a sale of the property had been cancelled and that in any event, even though a contract of sale had been entered into, it was an entire contract, embracing all the Boston heirs, and it is error to decree a partial enforcement of the contract.

The evidence is voluminous, covering over one hundred and eighty pages of the record, is very conflicting, and therefore we will not attempt to set it forth in full. Suffice it to say that the record discloses that Briggs, for a long period of time, had had dealings

with the Boston heirs looking to a sale of their property. The written evidence of Briggs' authority to negotiate a sale of the property consists of two contracts of agency. One of them is signed by J. W. Boston, the other is signed by Seymour Boston and the three daughters of J. T. Boston. Though the daughters. denied their signatures, the trial court held the signatures genuine. Briggs testified that he was in constant communication with C. M. Boston in regard to a sale of the property and that C. M. Boston approved of his. actions in the matter. The record is, we think, replete with facts and circumstances which fully warrant the holding of the trial court that there is sufficient proof that the parties signing the deed intended to convey their interest in the property.

The last contention of appellants is that, even if the deed could be given effect as a contract to convey, as to the parties who signed it, the transaction would yet fail, for the reason that none of the heirs could be held bound to a sale, except upon the joint action of all the others. It was stated at the bar of this court by counsel, that in the event this court refused to sustain. their contention that a specific performance on the part, of all the heirs should be decreed, the appellees were willing to conform to the decree of the lower court.

In *Mortlock* v. *Buller*, 10 Ves. R. 292, Lord. Eldon said: "If a man, having partial interests in an estate, chooses to enter into a contract, representing it, and agreeing to sell it, as his own, it is not competent. to him afterwards to say, though he has valuable interests, he has not the entirety, and therefore the purchaser shall not have the benefit of his contract. For the purpose of this jurisdiction, the person contracting under those circumstances is bound by the

assertion in his contract; and, if the vendee chooses to take as much as he can have, he has a right to that, and to an abatement; * *."

In *Dunsmore* v. *Lyle*, 87 Va. 393, 12 S. E. 610, 611, it is said: "While a purchaser, however, cannot be compelled to take a defective title, but has a right to insist upon a clear legal title, on the other hand, though the vendor cannot make the title he contracts to make, yet he may be compelled to convey such title as he has, and to compensate for the defect; nor does it lie for him to object for the want of a complete title in him."

Upon the whole case, we are of opinion that the decree should be affirmed.

*Affirmed.*