# Wytheville

## J. W. Boston v. Virginius R. Shackelford and E. H. DeJarnette, Jr.

June 14, 1934.

Present, Holt, Epes, Hudgins, Gregory and Chinn, JJ.

The opinion states the case.

*McGuire, Riely & Eggleston,* for the appellant.

*S. M. Nottingham,* for the appellees.

HOLT, J., delivered the opinion of the court.

This suit is a sequel to or a continuation of the cause of *Boston* v. *DeJarnette et al.,* brought in the Circuit Court of Orange county, and there decided on May 5, 1928. An appeal was taken to this court and that judgment was affirmed on January 16, 1930. It is reported in 153 Va. at page 591, 151 S. E. 146.

John T. Boston died many years ago intestate, seized and possessed of 723½ acres of land valuable for timber on it and lying partly in Louisa and partly in Orange county. He left to survive him a widow, who died in 1911, and six children, viz: John W. Boston, C. M. Boston, Seymour Boston, Mrs. Lottie Leighton, Mrs. Annie Tenney and Mrs. Mary Clark. These children by inheritance each took a one-sixth interest in their father's estate.

C. M. Boston, who lived near by, in a general way looked after the interests of his brothers and sisters. A sale was discussed and he, under the impression that he was authorized to act, placed this land in the hands of a real estate agent, W. W. Briggs, at the price of $15,000. That authorization was in writing and bore date May 4, 1918. The option ran for thirty days and was afterward extended until June 16th. Briggs finally came to an agreement with DeJarnette and Shackelford, who agreed to

purchase at the price named. A deed was tendered defective in certain particulars not necessary to elaborate. In the meantime the purchasers began cutting timber. In August following John W. Boston, Seymour Boston, Mrs. Lottie Leighton, Mrs. Annie Tenney and Mrs. Mary Clark filed their bill in chancery in which they asked that this cutting of DeJarnette and Shackelford be enjoined and that they be made to pay for damages done. There was an answer and cross-bill and an amended answer and cross-bill in which these purchasers asked specific performance of their contract of purchase upon payment of the $15,000, purchase price agreed upon. Specific performance was vigorously protested by all of the owners except C. M. Boston, who said that he was willing to stand by his bargain and to convey his interest whenever he was paid one-sixth of the sum promised. While this suit was pending J. W. Boston acquired by purchase the interest of his sister, Mrs. Tenney. Seymour Boston died and his brothers and sisters took his interest by inheritance. The trial court held by decree of May 5, 1928, that C. M. Boston and J. W. Boston, who were then the owners respectively of a one-sixth and of a two-sixths interest, and of whatever they took by inheritance from their brother Seymour, were bound by their contract of sale and decreed specific performance as to them, so far as their one-sixth and two-sixths interests, respectively, were concerned, the language of the decree being:

"II. That upon the payment by said V. R. Shackelford and E. H. DeJarnette, Jr., or by some one for them, to said C. M. Boston of the sum of $2,500 but without interest thereon said C. M. Boston shall sign, seal, asknowledge and deliver a deed, in sufficient and legal form and containing a covenant of general warranty and other usual covenants of title, conveying to said V. R. Shackelford and E. H. DeJarnette, Jr., a one-sixth undivided interest in said tract of land according to the proper description of said land as shown of record, or as may be otherwise made to appear.

"III. That, it appearing to the court that, pending this litigation, said J. W. Boston has acquired by purchase, and has had duly conveyed to him of record, the original one-sixth undivided interest in said tract of land of his sister, Annie Tenney, and that in consequence he now owns a one-third undivided interest in said land, exclusive of the interest now held by him as one of the heirs at law of said Seymour Boston, deceased, upon the payment to said J. W. Boston by said V. R. Shackelford and E. H. DeJarnette, Jr., or by some one for them, of the sum of $5,000 but without interest thereon, said J. W. Boston shall sign, seal, acknowledge and deliver a deed, in sufficient and legal form and containing a covenant of general warranty and other covenants of title, conveying to said V. R. Shackelford and E. H. DeJarnette, Jr., a one-third undivided interest in said tract of land according to the proper description of said land as shown of record, or as may be otherwise made to appear.

"IV. That the amended answer and cross-bill of said V. R. Shackelford and E. H. DeJarnette, Jr., filed therein on July 7, 1922, so far as treated as cross-bill, be and it is hereby dismissed.

"V. That said C. M. Boston is hereby directed to pay to W. W. Briggs one-third of said sum of $250 or the sum of $83.33, and that said J. W. Boston do likewise pay to said W. W. Briggs two-thirds of said sum of $250 or $166.67.

"VI. That the complainants, C. M. Boston, J. W. Boston, Mary Clark, Lottie Leighton and Annie Tenney, as heirs at law of Seymour Boston, deceased, and said Mary Clark and Lottie Leighton, with respect to their original respective one-sixth undivided interests in said tract of land, do recover of said V. R. Shackelford and E. H. DeJarnette, Jr., all costs expended by them in the prosecution of this suit; and that said V. R. Shackelford and E. H. DeJarnette, Jr., do recover of said C. M. Boston, J. W. Boston and Annie Tenney all costs expended by them in the prosecution of this suit."

This decree, as we have seen, was affirmed by this court

on January 16, 1930 (153 Va. 591, 151 S. E. 146, 149). The mandate of the court probably went down about the end of that month. At the hearing it was suggested that the contract of sale made through Briggs was joint and not severable. That suggestion this court settled in this way:

"The last contention of appellants is that, even if the deed could be given effect as a contract to convey, as to the parties who signed it, the transaction would yet fail, for the reason that none of the heirs could be held bound to a sale, except upon the joint action of all the others. It was stated at the bar of this court by counsel, that in the event this court refused to sustain their contention that a specific performance on the part of all the heirs should be decreed, the appellees were willing to conform to the decree of the lower court."

C. M. Boston did, on May 30, 1930, deliver an acceptable deed and was paid in full. Therefore we are here only concerned with J. W. Boston's one-third interest.

While suit was pending and in 1926, the timber was injured by fire charged against the C. & O. Railway. On February 7, 1930, Mr. DeJarnette wrote to Mr. Riely, counsel for the Bostons, calling attention to this claim for damages and suggesting that a joint suit be brought. He also called attention to the fact that "one of the parties against whom the decree was entered has placed a deed of trust for $2,000 on her interest and we will of course expect this lien to be satisfied as well as any other liens which may be against the property at the time the transaction is closed."

Mr. Riely replied on February 8th, to the effect that he had already advised his clients that they were required to convey their respective interests upon payment of the sum of $7,500. He said that he knew nothing about the trustee debt of $2,000 but presumed that it would be taken care of in the final settlement. He asked if the fire referred to was one that had already been discussed and promised to take up that matter with his clients.

On February 14, Mr. DeJarnette wrote that the fire was

that referred to in the original suit. On February 15th, Mr. Riely replied that he would communicate with his clients as soon as possible with a view to closing the transaction and would at the same time take up with them the claim for damages from this fire.

On March 6th, Mr. Riely wrote to Mr. Shackelford inquiring if he and Mr. DeJarnette would care to consider a buy or sell proposition, and suggested a conference. Mr. Shackelford replied on March 7th, saying that they were not interested in such a proposition but that if the Bostons were prepared to submit a concrete figure they would come to Richmond the next week to consider it. Receipt of that letter was acknowledged by Mr. Riely on March 8th. On March 14th, he wrote to Mr. Shackelford saying that his clients were willing to sell their outstanding one-half interest for $10,000. On March 28, 1930, Mr. Riely again wrote to Mr. Shackelford and said that he had received no reply to his letter of the 14th; that his clients were ready to close up the matter in accordance with the court's decree, and that regardless of the offer contained in the letter of March 14th, he would like at an early date to have a conference and arrange for carrying it out. On March 31st, Mr. Shackelford wrote that they were not interested in purchasing the outstanding interest at the price named but would consider its purchase for $7,500. He further suggested that if this figure did not interest the Boston heirs a deed for a one-half undivided interest be sent on with draft attached for the proper amount with instructions to the bank to hold it for a few days that the title might be brought down to date. He said that the Tenney lien would have to be released, the Briggs judgment taken care of and costs taxed. On April 1st, Mr. Riely replied saying that he did not think his clients would be interested in the $7,500 offer but would communicate with them. He further said:

"With respect to a closing of the transaction pursuant to the decree of court, as there are various matters to be attended to, do you not think it would be better to have

a meeting of the parties either here or in Orange to carry through the conclusion of the matter? Besides the passing of the deed and payment of the purchase money, there are the matters of (1) The release of the deed of trust on one of the interests, (2) The settlement of the Briggs judgment, (3) The payment of costs to be adjusted, (4) The settlement of the money derived from timber cut from the property, and (5) The question of the handling of the claim for fire damage—and perhaps other matters. Please let me know if you do not concur in my suggestion as to this. I could myself come to Orange, and probably my clients, so far as necessary, could also do so."

Mr. Shackelford replied on April 2d and said that it did not seem necessary that Mr. Riely come to Orange, but there was no objection to his doing so. He denied that there was any liability on them whatever for timber cut from the property. That letter was acknowledged from Mr. Riely's office on April 3rd. The acknowledgment said that Mr. Riely was out of the city but probably would return on April 8th. On April 7th, Shackelford wrote Riely, enclosing a letter from Mr. G. W. Trainum, the substance of which was that there should be joint compensation to the McClareys for fighting a recent fire which threatened this timberland. On April 8th, Riely wrote Shackelford that he had not yet heard from his clients as to the $7,500 offer. He took issue as to the liability of Shackelford and DeJarnette for damages incurred in their cutting of timber and suggested that if an agreement could not be reached the matter be submitted to the court. On April 15th, Shackelford wrote Riely that they had received an offer of $7 per pole for white oak poles sixty-five feet long. He said that this seemed to be a good offer and suggested that it be accepted. On April 19th, Riely wrote him that his clients were not willing to accept this offer. On May 15th, he wrote Shackelford, saying, "My clients, Messrs. C. M. Boston and J. W. Boston, are now ready and most anxious to close up this transaction in accordance with the court's decree," and suggested that he come to

Orange some day the next week to effect such a settlement. He enclosed a tentative draft of a deed from J. W. Boston and said that he would be glad to make any reasonable and proper changes in it. On May 16th, he wrote again suggesting that they take up with Judge Browning the liability of Shackelford and DeJarnette for timber cut. He further suggested that the question of costs would have to be settled. On May 16th, Shackelford wrote suggesting that Riely come to Orange on the 23rd. He called attention to the fact that there were some unpaid taxes on this property. He said that he understood that all liens should be released, and mentioned the Briggs judgment particularly. On May 16th, he again wrote to Riely and said that so far as he knew there was no question in the suit as to the value of timber cut from the property and that there was nothing further to litigate or settle. On May 19th, Riely wrote Shackelford saying that he expected to be in Orange on the 23rd. He said he understood that liens would have to be released; that he knew nothing about unpaid taxes; that it was the custom in Richmond to prorate them for the current year; that he had advised J. W. Boston of the necessity for release of the trust deed lien; that the matter of cost would have to be adjusted, and that they could take up with Judge Browning the question of liability for timber cut. For various reasons the meeting suggested did not take place until May 30th. On May 31, 1930, Mr. Riely wrote to Mrs. Charles Tenney in Los Angeles, California. He told her of the decision of the Court of Appeals; he told her of his trip to Orange and of the sale that could not be closed because there was reserved in the deed to her brother a vendor's lien for $1,500. He said that he had been told that the debt was in fact paid, and asked her to return the note which evidenced it, if it had not already been returned. He also said that it was necessary to have the lien released of record and enclosed a paper to be signed and acknowledged, authorizing Mr. A. Stuart Robertson to make the necessary release. On June 2d, Mr. Riely

wrote to Judge Browning saying that in his opinion the Briggs judgment should not bear interest, and submitted that question to the judge. On June 4th, DeJarnette wrote to Mr. Riely, saying: "He [the judge] indicated that his ruling on the question of liability for timber would be that we would be actionable for one-half actual stumpage and that C. M. Boston would be liable to us, and I told you before we settled that if you insisted on this point decided by the court that I in turn would insist on the retention of a reasonable sum on behalf of C. M. Boston to cover this. You stated that you would see your client and let me know, and as you failed to mention this in our settlement and collected from me for C. M. Boston's share in full, I assume that you did not intend to push this point. Please notify the judge what your actual intentions are in this matter."

On June 5, Mr. Riely wrote to Mr. DeJarnette saying that in view of the judge's ruling they did not desire to press the timber claim; that the necessary papers had gone forward to Mrs. Tenney in California; that he would be prepared to close up the J. W. Boston end of the transaction as soon as they were returned, and that he had DeJarnette's check and J. W. Boston's check for their proportionate share of the cost, which would be forwarded to the clerk. On June 7th, Judge Browning wrote both to DeJarnette and to Riely saying that the Briggs judgment should bear interest. On June 9, Mrs. Tenney wrote to Riely acknowledging receipt of papers. She said that there was still $50 due her and that if this was paid she would sign and return the papers received. On June 20th, Riely sent to her this balance due. On July 26th, he wrote to Shackelford, saying:

"Among the papers agreed to be returned to you with this draft was the deed from J. W. Boston and C. M. Boston to you and Mr. DeJarnette, covering any interest which they might have in the claim against the Chesapeake and Ohio Railway Company for fire damage suffered by this property. Mr. C. M. Boston has now changed

his mind about giving this deed and has instructed me not to deliver it. Mr. J. W. Boston is willing to give a separate deed conveying and assigning his interest in this claim. I have advised Mr. C. M. Boston that I cannot represent him in the matter further, because of the fact that the definite agreement made with you at our conference referred to was that this deed would be given, and it was then prepared by Mr. Shackelford and signed and acknowledged by Mr. Boston. As Mr. J. W. Boston is willing to carry out his agreement in this respect, and, in all other respects, to comply with the decree of May 5, 1928, I hope that you will be willing to settle with him and will advise me accordingly." He further said that J. W. Boston advised him that he expected to go to Orange and make a direct settlement with Briggs for the Briggs judgment. Mr. Riely did not approve of this but it was done. The judgment, according to a receipt given, was settled without the payment of interest.

Mr. Shackelford replied to this letter of July 28th and said in part:

"Your letter of the 28th [?] in regard to the Boston case is duly received. Both of the matters referred to in your letter seem to us to be very unusual and quite contrary to our understanding and entirely improper on the part of the Bostons. We understand that you are not a party to this matter and that you disapprove of it. However, we are unwilling to close this matter leaving the fire damage matter outstanding. As we understand there is one deed from J. W. and C. M. Boston to us and if that is the case, how can we close the transaction and settle with one leaving the other interest outstanding?"

On August 4th, Mr. Riely wrote Mr. Shackelford that J. W. Boston was ready to close the transaction in accordance with the decree of May 5, 1928, and in addition to assign and convey any interest which he had in fire damages. This letter was afterwards addressed to the First and Merchants National Bank of Richmond:

"Gentlemen:

"We hand you herewith a draft drawn by us, as attorneys for J. W. Boston, on Messrs. Virginius R. Shackelford and E. H. DeJarnette, Jr., of Orange, Virginia.

"Upon the payment of the amount of this draft to your correspondent bank, it will be authorized to deliver the following papers now enclosed, namely:

"1. A deed of bargain and sale from J. W. Boston to Virginius R. Shackelford and E. H. DeJarnette, Jr., dated May 24, 1930, conveying a two-sixths undivided interest in a tract of land, containing 723½ acres, more or less, as described therein.

"2. A deed from J. W. Boston to Virginius R. Shackelford and E. H. DeJarnette, Jr., dated August 11, 1930, transferring and assigning to them the two-sixths undivided interest of J. W. Boston in and to a claim or claims for damages against the Chesapeake and Ohio Railway Company for damages done by fire within the past five years to the tract of land above mentioned.

"3. An affidavit of Annie Tenney, sworn to on June 28, 1930, showing the loss or destruction of a note for $1,500 dated April 2, 1919, and payable twelve months after date, and secured by a vendor's lien under a deed from herself and husband to John W. Boston, dated April 2, 1919, and of record in the clerk's office of the Circuit Court of Orange county, Virginia.

"4. A power of attorney from Mrs. Annie Tenney to A. Stuart Robertson, dated June 28, 1930, authorizing the release of the vendor's lien last above noted.

"5. A note of J. W. Boston, dated November 19, 1929, for $2,000, payable two years after date to Lottie Leighton. This note, your correspondent will be authorized, upon the payment to it of the amount of the draft above mentioned, to mark 'Paid' and deliver to Messrs. Shackelford and DeJarnette.

"6. A power of attorney from Mrs. Lottie Leighton to A. Stuart Robertson, dated May 31, 1930, authorizing the release and marking of satisfaction of the deed of trust

securing the above $2,000 note dated November 19, 1929, from John W. Boston to James H. Price and Lottie Leighton, trustees.

"7. The original and one copy of a receipt, dated July 22, 1930, given by W. W. Briggs to J. W. Boston for the payment by the latter of $166.67, as more fully shown in the receipt. Your correspondent is authorized to exhibit the original of this receipt to Messrs. Shackelford and DeJarnette and to deliver to them the copy of the receipt, then returning the original receipt to you.

"Very truly yours,

"H. C. Riely."

To that letter this reply was made:

"August 13, 1930.

"H. C. Riely, Esq.,
"Mutual Building,
"Richmond, Virginia.

"Dear Sir:   "We have a copy of your letter of the 12th to the First and Merchants National Bank. The papers which you state are enclosed with the draft drawn on us through the bank do not comply with our agreement. We have had so much trouble and difficulty with this matter, we have decided not to accept the deeds from your client and not to proceed further with the further purchase of this property as we have a right to do under all circumstances.

"Yours very truly,

"V. R. Shackelford."

On November 1, 1930, J. W. Boston filed his petition in which he asked that a rule issue against Virginius R. Shackelford and E. H. DeJarnette, Jr., requiring them to show cause why they should not be compelled to comply with the decree of May 5, 1928, by paying to him the sum of $5,000 upon the execution and delivery to them of a proper deed and other papers sufficient to convey a clear

and unencumbered title to his two one-sixths interests in the land.

On December 5, 1930, respondents answered. They denied that they were in default but on the contrary said that on May 30, 1930, they were ready and willing to complete the transaction; that Mr. Riely then assured them that the title would be promptly cleared of liens and that a separate grant would be executed covering fire damage. They further stated that such an agreement was drafted by Mr. Riely, signed by C. M. Boston and retained by Mr. Riely with the understanding that it was also to be executed by J. W. Boston, but that it had never been executed by him and that the liens covering this land had not been cleared. They claimed that the property had depreciated in value since the decree of specific performance was entered to the extent of $2,500 but expressed themselves as willing to complete the purchase, provided there was an abatement in the purchase price to the extent of $1,250.

On April 8, 1931, an order of reference was entered, afterwards executed by Master Commissioner W. C. Bibb, and on March 10, 1932, an amended answer was filed withdrawing their offer to purchase subject to said abatement of $1,250. Mr. Shackelford has testified as to what his objections were:

"Well we took the position first that under the decree of the Court of Appeals there was no judgment against us, and that we were not compelled to comply, and secondly that by reason of the delay and the changed conditions we were justified in refusing to go further with the transaction, and as to the specific papers with the draft, we felt that we were entitled to have this joint deed with reference to fire damage and that the deed from J. W. Boston alone was not sufficient. I don't think we made any examination at that time further in reference to the papers. We did not examine the power of attorney or say anything to Mr. Robertson in one way or the other, or to Mr. Riely, the form of the deed to the property to

the two-sixths interest was all right, I think, but there still remained the question of these delinquent taxes in Louisa. I have not examined the record here; I think Mr. DeJarnette has examined the record here with reference to those taxes."

He was further asked "if the papers which accompanied this draft had been free from objection would you all have honored the draft?" and answered, "No, sir, we would not." He was further asked: "What I want to find out is whether when the draft arrived payment was refused primarily because the papers which accompanied the draft were not regarded as sufficient or whether after the draft arrived you decided you would not take the property at all at $5,000?" and answered: "Both reasons were primary. We would not have paid that draft as the papers stood, then, even if there had been no change in conditions because we did not regard them as a compliance with our agreement."

Mr. DeJarnette was asked if there were delinquent taxes on the property as of May, 1930, and answered that he did not know.

In the correspondence noted Mr. Shackelford, by letter of date July 28, 1930, said to Mr. Riely: "We understand that you are not a party to this matter and that you disapprove of it. However, we are unwilling to close this matter leaving the fire damage matter outstanding." The matter referred to here as unusual was the conduct of J. W. Boston in making settlement for the Briggs judgment over the head of counsel, and the conduct of C. M. Boston in refusing to permit Mr. Riely to deliver a deed executed by him conveying to Shackelford and DeJarnette any claims which they might have had for the 1926 fire.

At the meeting in Orange on May 30, 1930, such a deed was drawn up and executed by C. M. Boston. Mr. Riely took it to Richmond that it might be executed by J. W. Boston who was not then present. This is the deed which C. M. Boston afterwards directed Mr. Riely not to deliver. C. M. Boston had already been paid the $2,500 due him

and had delivered a satisfactory deed for his interest in the land.

J. W. Boston was willing and expressed himself as willing to execute a separate deed conveying this interest in this fire damage, but it was impossible for him to force C. M. Boston to consent to the delivery of the joint release which C. M. Boston had signed and which he had been expected to sign. The interests of C. M. Boston and J. W. Boston were wholly independent of each other though both were interests in the same land. This independence was recognized in the decree of May 5, 1928, and was recognized by Shackelford and DeJarnette, who had taken a separate deed from C. M. Boston. In other words, C. M. Boston could not, by refusing to permit this joint deed to be delivered, destroy the claim of his brother.

■ There is sharp conflict in evidence as to the depreciation in value from May 30, 1930, to August 13, 1930. The commissioner who heard the testimony was of opinion that substantial depreciation had been shown. His judgment the court confirmed and in this conflict it is our duty to accept it.

Commissioner Bibb found for the respondents upon the merits of the controversy. His report the court confirmed.

■ There is no material conflict in the testimony except as to depreciation in values. The evidence upon which this case must turn is in writing. When we have ascertained the legal effect of undisputed facts our inquiry is at an end. In other words, the matters in issue are matters of law and so the rule as to the weight which should sometimes be accorded a commissioner's report does not apply. It and the order of confirmation are presumed to be right. But this court must examine the evidence as an original proposition and not as it would look to that relied upon to support a jury's verdict. *Sterling* v. *Trust Co.,* 149 Va. 867, 141 S. E. 856.

In *Clevinger* v. *County School Board,* 139 Va. 444, 124 S. E. 440, 441, Judge Prentis said: "It is fundamental, however, that notwithstanding the weight due to a commis-

sioner's report and the respect which is accorded his findings, neither the trial court nor this court should avoid the duty of weighing the evidence when its sufficiency is fairly challenged. Neither in the trial court, nor here upon appeal, should any judgment stand if the record shows that it is unsupported by the testimony." See, also, *Hitt* v. *Smallwood,* 147 Va. 778, 133 S. E. 503.

■ The commissioner held, and rightly held, that the decree of May 5, 1928, was binding alike upon J. W. Boston and upon Shackelford and DeJarnette.

■ A contract may be unilateral, but, when suit is brought for its enforcement, he who has not theretofore been bound will be deemed to have consented to it in writing and to have made the obligations mutual. *Central Land Co.* v. *Johnston,* 95 Va. 223, 28 S. E. 175; *Burdine* v. *Burdine,* 98 Va. 515, 36 S. E. 992, 81 Am. St. Rep. 741; *McClanahan's Adm'r* v. *N. & W. Ry. Co.,* 122 Va. 705, 96 S. E. 453.

There has been a general shift of position. Originally Shackelford and DeJarnette asked for specific performance. J. W. Boston contested their claim. Now J. W. Boston is asking for specific performance. Shackelford and DeJarnette say that it should not be ordered.

Properly speaking, we are not now dealing with specific performance at all and so no question as to the discretion of a court in such cases arises. We are now to determine whether a final decree shall be enforced. The wisdom of that decree is not in issue. *Kemp* v. *Miller,* 160 Va. 280, 168 S. E. 430.

There has been considerable delay. Suit was first brought in 1918. The trial court entered final judgment in 1928, that judgment was affirmed in 1930 (153 Va. 591, 151 S. E. 146), and final negotiations were definitely broken by Mr. Shackelford's letter on August 13, 1930. It is possible that the nerves both of counsel and litigants had become somewhat frayed. But not until Mr. Shackelford's letter did it appear that a satisfactory conclusion would not be reached, and we do not think that the evi-

dence shows any deliberate purpose on the part of J. W. Boston to disobey the court's decree.

We have seen that respondents first took the position that the decree of May 5, 1928, was unilateral in its operation and did not bind them. We have also seen that this position is untenable.

Mr. Shackelford, in his letter of May 16, 1930, suggested that there was a lien for delinquent taxes which Boston should satisfy. Commissioner Bibb stated that so far as he was advised, there were no unpaid taxes.

Shackelford and DeJarnette also took the position that the claim for damages from fire, suffered in 1926, should be definitely assigned to them. J. W. Boston never contested their right to any recovery which might come from that source. The record in the first cause shows that this 1926 fire was known when the decree of May 5, 1928, was entered. They probably thought that their right to recover from this source followed as a matter of law. But whether that be true or not no such right was incorporated into the decree which directed specific performance. That decree dealt only with the purchase money, the Briggs judgment, and the apportionment of costs. When these matters had been settled Boston was obliged to convey his interest, and Shackelford and DeJarnette were obliged to accept it. If, as a matter of law, Boston's interest in this claim did not pass, the purchasers had no right to it, and if it did pass they took it independent of any claim which Boston might have asserted. They took under decree of May 5, 1928, which defined their rights and obligations.

Whatever these rights were their assignment was not made a condition precedent to the specific performance ordered by it. But J. W. Boston did not stand upon this right. He made no claim to it and was always willing to execute for himself a separate deed of release.

The substance of Mr. Shackelford's letter of July 28th is that he was "unwilling to close this matter leaving the fire damage matter outstanding," and the form in which

it should be closed, according to his contention, was by the execution and delivery of the joint release written on May 30th, which C. M. Boston had signed and which J. W. Boston was expected to sign. This was an untenable position, and for the delay which it occasioned respondents are responsible.

There was a vendor's lien for $1,500 on the Tenney interest sold to J. W. Boston. He thought it had been paid. All of it had been paid but $50. Mrs. Tenney lived in California; when it was ascertained that there had been no formal release the matter was taken up with her; she was paid the $50 and executed a power of attorney to Mr. A. Stuart Robertson, Mr. Shackelford's partner, of date June 28, 1930, authorizing such a release.

There was a deed of trust on J. W. Boston's interest to secure to Mrs. Leighton $2,000. She also executed a power of attorney to Mr. Robertson under date of May 31, 1930, authorizing its release. Mrs. Leighton lived in Massachusetts. That power of attorney also was sent on to the Richmond bank. It is true that Mr. Robertson says that he was unwilling to act under authority thus conferred, but Mr. Riely had no reason to suppose that he would object, and his designation was but a gesture of courtesy and confidence.

Even if provision had not been made for the release of these liens, they would have presented no insuperable difficulty.

A mere encumbrance upon real estate is not sufficient to bar a suit for specific performance if it can readily be removed by the application of the purchase money. *Hudson* v. *Max Meadows, L. & I. Co.,* 97 Va. 341, 33 S. E. 586; *Davis* v. *Beury,* 134 Va. 322, 114 S. E. 773, 115 S. E. 527; 25 R. C. L. p. 277.

Finally, it is said that timber land fell rapidly in value from May 30th to August 13, 1930. It is a matter of common knowledge that property values during all of the period covered by these negotiations were falling away, and of course the timber market was no exception

to the general rule. There had been what was in effect a judgment against Shackelford and DeJarnette in that they were required to pay $5,000 to Boston, upon the payment of which "the said J. W. Boston shall sign, seal, acknowledge and deliver a deed in sufficient and legal form and containing a covenant of general warranty and other covenants of title." Against this judgment they have sought to set up an unliquidated claim for damages, and once offered to complete the purchase if there was an abatement of $1,250 in the price. Of course, this cannot be done. But if it be said that no such claim is in fact made and that specific performance should not be ordered because of change in conditions, there are a number of answers. This is not a suit for specific performance but a proceeding to enforce a judgment. Not from January 16, 1930, until the answer was filed was this condition suggested. If relied upon, notice might have been given, and the cause speeded. Had there been a rapid appreciation in values, Boston could not have been heard to say that specific performance would be inequitable because of change in conditions. As a matter of fact, values appear now to be advancing.

We have seen that Mr. Shackelford, in his letter of July 28, 1930, took the position that this claim for fire damage should be finally settled before he would be willing to close up the transaction. He here pitched his objection and his case upon this single claim. His next letter, of August 13th, is a general statement to the effect that he is unwilling to proceed further with the purchase. One may waive other demands and stake his case upon a single point and is bound by the test to which he puts it. *Wolford* v. *Jackson,* 123 Va. 280, 96 S. E. 237; 27 R. C. L. p. 513.

At that time this was the situation: There were no delinquent taxes; costs had been adjusted; the Briggs judgment had been settled; the claim for damages for timber cut by Shackelford and DeJarnette had been waived; there was no claim for relief on account of depreciation

in values, and it was in any event within the power of the purchasers to protect themselves from any liens of record when they came to make payment, so that certainly then the only suggested objection which could have had any force was that named by Mr. Shackelford in this letter. For the delay which it occasioned he was in part responsible.

If the matter in judgment was an ordinary contract for the sale and purchase of land, the law would still be with the petitioner. Time is not ordinarily deemed in equity as of the essence.

"In contracts for the sale of land equity has established the rule that unless expressly made so by the terms of the contract or by special circumstances, time is not essential." Williston on Contracts, section 825; *Morris* v. *Harrop,* 154 Va. 127, 152 S. E. 343; *Beckett* v. *Kornegay,* 150 Va. 636, 143 S. E. 296; 13 C. J. 686.

Even, however, where not originally of the essence, when the time for performance has passed he who seeks action may give notice as to the time within which it must be executed, if at all. If the time so fixed is reasonable, then the limits named must be observed. What is important is this: There must be notice before time can be made of the essence where it was not a part of it originally. 6 R. C. L. p. 900; *Chabot* v. *Winter Park Co.,* 34 Fla. 258, 15 So. 756, 43 Am. St. Rep. 192; *Foster* v. *Ley,* 32 Neb. 404, 49 N. W. 450, 15 L. R. A. 737, and note; *Kirby* v. *Harrison,* 2 Ohio St. 326, 59 Am. Dec. 677.

Usually we judge men by what they do and not by their motives. *Dickerman* v. *Northern Trust Co.,* 176 U. S. 181, 20 S. Ct. 311, 44 L. Ed. 423. Measured by this rule we see no evidence of any act of Boston's which indicates an intention on his part to disobey the mandate of the decree of May 5, 1928. We do not believe that there was originally any purpose on the part of anyone to do this. Matters drifted as law-suits do. It is hard to apportion the blame but we should not readily assume that the owner of this timber on a rapidly falling market was

anxious to avoid a sale which from his viewpoint was then eminently desirable.

If Mr. Robertson is still unwilling to execute the powers of attorney mentioned in the letter of August 12, 1930, and sent to the First and Merchants National Bank of Richmond, then another attorney in fact may be named, or the court itself may order the necessary releases under authority of Code, section 6456. Subject to the possibilities of delay in the releases authorized upon the tender of the various instruments described in said letter of August 12th, J. W. Boston will be entitled to receive in exchange the $5,000 heretofore decreed as his compensation for his two one-sixths interests in this timberland as set out in the decree of May 5, 1928, and as affirmed by this court on January 16, 1930.

For reasons stated the decree of the trial court is reversed, and those things which we have indicated as proper to be done must be done.

*Reversed.*

GREGORY, J., dissenting.